ALMADANI LAW
Yasin M. Almadani,
State Bar No. 242798
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Ph: 949-877-7177
Fax: 949-877-8757
yma@lawalm.com

AI LAW, PLC
Ahmed Ibrahim,
State Bar No. 238739
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Ph.: 949-266-1240
Fax: 949-266-1280
aibrahim@ailawfirm.com

*Attorneys for Plaintiff Wingsail Holdings, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINGSAIL HOLDINGS, LLC, a Washington Limited Liability Company, | Case No. 8:23-CV-02098 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **1. FRAUD** |
| ANDREW POLSKY, an individual, ALTER MANAGEMENT, LLC, a California Limited Liability Company, ALTER HEALTH GROUP, INC., a California Corporation, ALTER LIFE SCIENCES, INC., a California Corporation, ALTER LIFE SCIENCES, LLC, a California Limited Liability Company, CAMBRIDGE MENTAL HEALTH MANAGEMENT LLC, a California Limited Liability Company, SEFED, a California Corporation, and DOES 1 through 10; | **2. FRAUD (CONCEALMENT BY DECEPTIVE DISCLOSURE)** |
| | **3. FRAUD (CONCEALMENT BY FIDUCIARY)** |
| | **4. BREACH OF FIDUCIARY DUTY** |
| | **5. CONVERSION** |
| | **6. BREACH OF ORAL CONTRACT** |
| | **7. BREACH OF IMPLIED COV. OF GOOD FAITH AND FAIR DEALING** |
| | **8. UNJUST ENRICHMENT** |
| | **9. ACCESS TO CORP. RECORDS** |
| Defendants. | **10. REMOVAL OF MEMBER** |
| | **11. DECLARATORY RELIEF** |
| | **DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

I.  JURISDICTION AND VENUE .................................................................. 3

II.  NATURE OF THE ACTION ..................................................................... 3

III.  PARTIES ............................................................................................... 4

A.  Plaintiff ............................................................................................. 4

B.  Defendants ........................................................................................ 4

C.  Alter Ego Relationships ................................................................... 7

IV.  GENERAL ALLEGATIONS ..................................................................... 9

A.  Polsky's False Promises, as Principal and Manager of Alter, to Induce Capital Investments by Wingsail ................................................... 9

B.  Polsky's Continuing Fraud as Principal and Manager of Alter, Perpetrated upon Wingsail and Chang .................................................... 14

C.  Polsky's Continuing Fraud as Principal and Manager of SEFED and Alter, Perpetrated upon Wingsail and Chang ..................................... 15

V.  DISCOVERY RULE & FRAUDULENT CONCEALMENT ................................... 19

VI.  RELATION TO PRIOR CLAIMS ............................................................. 20

VII.  CLAIMS FOR RELIEF ......................................................................... 20

VIII. PRAYER FOR RELIEF .......................................................................... 39

Complaint of Wingsail Holdings, LLC

Plaintiff Wingsail Holdings, LLC ("Plaintiff" or "Wingsail") hereby files this complaint against Andrew Polsky ("Polsky"), Alter Management LLC, Alter Health Group, Inc., Alter Life Sciences, Inc., Alter Life Sciences, LLC, Cambridge Mental Health Management, LLC (collectively, the "Alter Entities" or "Alter"), and SEFED (all entities collectively, the "Polksy Entities"), and alleges as follows.[1]

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Wingsail's state-law claims pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Wingsail, on the one hand, and Polsky and the Polsky Entities, on the other hand, and more than $75,000 is in controversy in this action, exclusive of interest and costs.

2. This Court also has supplemental jurisdiction over Wingsail's state-law claims pursuant to 28 U.S.C. § 1367 because all of its state-law claims are derived from a common nucleus of operative facts and are of the kind they would ordinarily expect to try in one judicial proceeding.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, or a substantial part of the property that is the subject of the action is situated in this District, and because at least one of the Defendants resides in this judicial district.

## II. NATURE OF THE ACTION

4. Polsky, individually and on behalf of the Polsky Entities as part-owner and manager, engaged in fraud against Wingsail to induce Wingsail to invest nearly $1 Million seed capital in the Alter startup. Polsky represented orally and in writing that Wingsail would own 65% of the Alter shares, as well as receive annual profits and distributions from Alter on a priority basis amounting to at least 8% annual interest on Wingsail's outstanding principal investment, which would accrue and be paid when Alter was financially able to make the distributions. However, when Polksy made these representations to induce Wingsail to invest, he never intended on giving Wingsail its shares and interest. Polsky

---

[1] All allegations in this pleading are made at all times relevant and material to this pleading.

Complaint of Wingsail Holdings, LLC

strung along Wingsail for years giving Wingsail false assurances that its shares were secure, and that the distributions would be paid as soon as Alter was financially able to make the payments. Alter did become extremely successful and profitable with an approximate present net worth believed to be in excess of $45 Million. Yet Defendants, acting through Polsky, refuse to give Wingsail its shares and recognize Wingsail's rights as a shareholder, and have not paid the distributions that are owed. Wingsail thus seeks to vindicate its rights and brings claims for fraud, breach of fiduciary duty, conversion, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violations of the Corporations Code, against Defendants.

## III.   PARTIES

### A.   Plaintiff

5.   Plaintiff Wingsail is a Washington State limited liability company with its principal place of business in the State of Washington.

6.   Wingsail is fully owned by Yunfei "Kristy" Bai ("Bai" or "Kristy Bai"), who is a foreign national.

### B.   Defendants

7.   Defendant Andrew Polsky ("Polsky") is an individual and resident of the State of California, County of Orange.

8.   Defendant Alter Management LLC ("Alter Management"), formed on or about July 27, 2018, is a California limited liability company with its principal place of business located at 34232 Pacific Coast Highway, Suite D, Dana Point, California 92629.

9.   Alter Management is engaged in the business of behavioral healthcare and substance abuse rehabilitation.

10.   Polsky is Alter Management's "Organizer" and "Manager," and is also an owner.

11.   Alter Management acts through its principals and managers, including Polsky.

12.   Defendant Alter Health Group, Inc. ("Alter Health"), formed on or about July 1, 2021, is a California corporation with its principal places of business located at 34232

-4-

Pacific Coast Highway, Suite D, Dana Point, California 92629, and 34270 Pacific Coast Highway, Suite C, Dana Point, California 92629.

13.     Alter Health is engaged in the business of behavioral healthcare and substance abuse rehabilitation.

14.     Polsky is Alter Health's "Incorporator," "Chief Executive Officer," "Secretary," "Chief Financial Officer," and "Director," and is also an owner.

15.     Alter Health acts through its principals and managers, including Polsky.

16.     Defendant Alter Life Sciences, Inc. ("Alter LS Inc."), formed on or about September 17, 2021, is a California limited liability company with its principal place of business located at 34232 Pacific Coast Highway, Suite D, Dana Point, California 92629.

17.     Alter LS Inc. is engaged in the business of behavioral healthcare and substance abuse rehabilitation.

18.     Polsky is Alter LS Inc.'s "Incorporator," "Chief Executive Officer," "Secretary," "Chief Financial Officer," and "Director," and is also an owner.

19.     Alter LS Inc. acts through its principals and managers, including Polsky.

20.     Defendant Alter Life Sciences, Inc. ("Alter LS LLC"), formed on or about December 2, 2021, is a California limited liability company with its principal place of business located at 34232 Pacific Coast Highway, Suite D, Dana Point, California 92629.

21.     Alter LS LLC is engaged in the business of behavioral healthcare and substance abuse rehabilitation.

22.     Polsky is Alter LS LLC's "Organizer" and "Agent for Service of Process," and is also an owner. Alter LS LLC's "Manager" is Alter Management whose Organizer and Manager is Polsky.

23.     Alter LS LLC acts through its principals and managers, including Polsky.

24.     Defendant Cambridge Mental Health Management LLC ("Cambridge"), formed on or about October 18, 2018, is a California limited liability company with its principal place of business located at 34232 Pacific Coast Highway, Suite D, Dana Point, CA 92629.

25. Cambridge is engaged in the business of mental health services and behavioral healthcare.

26. Polsky is Cambridge's "Chief Executive Officer" and "Agent for Service of Process," and is also an owner. Cambridge's "Manager" is Alter Management whose Organizer and Manager is Polsky.

27. Cambridge acts through its principals and managers, including Polsky.

28. The foregoing allegations establish that Alter Management, Alter Health, Alter LS Inc., Alter LS LLC, and Cambridge (collectively, "Alter" or the "Alter Entities") are all engaged in behavioral and mental healthcare, all share the same business address, and are all owned, controlled, and managed by Polsky. The Alter Entities comprise a common venture controlled by Polsky and run through a web of companies that originate from the seed capital provided by Plaintiff Wingsail.

29. Polsky's wife, Gayle Polsky ("G.Polsky"), is a psychologist working in the mental and behavioral health field. At Polsky's behest, Alter employs G.Polsky in a position of power and control.

30. As described more fully below, the Alter Entities exist because of startup capital invested by Plaintiff Wingsail.

31. Defendant SEFED, formed on or about November 13, 2018, is a California company with its principal place of business located at 3857 Birch Street, Suite 12, Newport Beach, CA 92660.

32. Polsky is SEFED's "Organizer," "Chief Executive Officer," "Secretary," "Chief Financial Officer," and "Director," and is also an owner.

33. SEFED acts through its principals and managers, including Polsky.

34. The foregoing allegations further establish that Polksy is the principal and manager of not only Alter but also SEFED.

35. The law holds that the Alter Entities and SEFED are liable for the acts and omissions of Polksy undertaken on their behalf, as well as for the benefit of Polsky.

36. The true names and capacities, whether individual, corporate, associate, or

otherwise of Defendants named as DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend this complaint to show the true names and capacities of such fictitiously named Defendants when the same have been ascertained. Plaintiff further alleges that each of said fictitious Defendants is in some manner responsible for the acts, omissions, and occurrences hereinafter set forth. Plaintiff is informed and believes, and on that basis alleges, that each fictitiously named defendant conspired with and/or aided and abetted and is responsible for the acts, omissions, and occurrences herein alleged, and that the damages claimed herein were proximately caused by such Defendants. Each of the Defendants named as DOES 1 through 10 is legally responsible in some manner for the sums, damages, and relief alleged herein.

37.    At all times relevant to the allegations of this amended complaint, Defendants, and each of them, were aiding and abetting each other and/or acting as the agents, servants, employees, alter egos, or successors or predecessors in interest of each of the other Defendants, and were acting within the course and scope of such relationship with the knowledge, consent, permission, authorization, and ratification, either express or implied, of each of the other Defendants in performing the acts or omitting to act as alleged in this amended complaint.

### C.    Alter Ego Relationships

38.    On information and belief, there has existed a unity of interest and ownership between and among Polsky and the Alter Entities such that any individuality and separateness between or among them has ceased, and such that each is the alter ego of the other; in that:

a.    Polsky has at relevant times completely controlled, led, dominated, managed and operated the Alter Entities, has intermingled his assets with their assets, and has intermingled the assets of each of them with those of the other, to suit his and their convenience and for the purpose of avoiding creditors;

b.    Polsky has at all relevant times used the assets of the Alter Entities for

Complaint of Wingsail Holdings, LLC

his own use, and has caused or will cause their assets to be transferred to him and to one another without adequate consideration; and

    c.    Each of the Alter Entities is, and at relevant times was, a mere shell, instrumentality, and conduit through which Polsky carried on his businesses, exercising complete control and dominance of the Alter Entities to such an extent that any individuality or separateness between and among them does not, and at all relevant times did not, exist.

    d.    All the businesses of Alter Entities share the same website and physical addresses.

    e.    All the business of the Alter Entities share employees, resources, accountants, attorneys, and bank accounts, and commingle funds and fail to segregate finances between the entities.

39.    On information and belief, there has existed a unity of interest and ownership between and among Polsky and SEFED such that any individuality and separateness between or among them has ceased, and such that each is the alter ego of the other; in that:

    a.    Polsky has at relevant times completely controlled, led, dominated, managed and operated SEFED and has intermingled his assets with SEFED's assets to suit his convenience;

    b.    Polsky has at relevant times used the assets of SEFED for his own use, and has caused or will cause SEFED's assets to be transferred to him without adequate consideration; and

    c.    SEFED is, and at relevant times was, a mere shell, instrumentality, and conduit through which Polsky carried on his businesses, exercising complete control and dominance of the SEFED to such an extent that any individuality or separateness between and among them does not, and at all relevant times did not, exist.

# IV. GENERAL ALLEGATIONS

## A. Polsky's False Promises, as Principal and Manager of Alter, to Induce Capital Investments by Wingsail

40.     In or around April 2018, Polsky sought to enter the business of behavioral and mental healthcare and drug rehabilitation. Polsky, however, needed seed capital of nearly $1 Million dollars to start the business, and he had none. He thus brought up the idea to Fu-Shen "Max" Chang ("Chang")—a businessman and investment manager specializing in foreign financing with whom Polsky had a business relationship—and suggested that the two enter a venture together in the behavioral and mental healthcare and drug rehabilitation space. This venture eventually became Alter, a series of companies managed and operated by Polsky through the Alter Entities.

41.     In or about April 2018, Polsky asked Chang to secure the approximately $1 Million seed capital needed for Alter using his expertise in U.S. Citizenship and Immigration Services ("USCIS") foreign investment visa programs. Polsky spent the next several weeks convincing Chang that Alter could be very successful, and that Chang and any foreign investor he was able to secure would benefit tremendously from Alter's success.

42.     Convinced by Polsky, in April and May 2018, Chang tapped his foreign investor contacts with whom he had built relationships of trust, including Kristy Bai, to consider investing seed capital for the Alter startup. Chang pitched to Bai that she should invest in the Alter startup, promising, at Polsky's request and direction, that Bai would receive significant majority shares in Alter and be eligible to process a U.S. visa through the E2 visa program, which requires the foreign investor to maintain a majority interest in the U.S. company, in this case, Alter.

43.     From mid-May to August 2018, at Polsky's requests, Chang set up phone and in-person meetings, including an in-person meeting in Newport Beach, California, between Bai and Polsky to convince Bai to invest in Alter. At those meetings, Polsky himself convinced Bai that she should invest seed capital in Alter and promised that, in return, Bai

would receive 65% of the membership interest in Alter, along with all the rights and entitlements that accompany such a majority interest, as required by the E2 visa program, as well as annual profits and distributions from Alter on a priority basis amounting to at least 8% annual interest on Bai's outstanding principal investment, which would accrue and be paid when Alter was financially able to make the distributions. After the meeting, Polsky called Chang and informed Chang that he had made these promises to Bai, and that Chang should continue to convince Bai to invest in Alter in exchange for the benefits Polsky was promising.

44.     In or about July 2018, Polsky, with Chang, presented Bai a business plan and PowerPoint presentation to convince her to invest seed capital in Alter. Bai was relying on Polsky's representations and also wanted Chang involved as Wingsail's investment manager because she trusted Chang.

45.     Polsky preyed upon Chang's relationship of trust with Bai and put tremendous pressure on Chang to convince Bai to invest in Alter, which Chang did, relying on Polsky's representations of the projected success of Alter and benefits to Bai, as well to Chang for securing the seed capital investor.

46.     At the same time, Polsky himself also convinced Bai to invest in Alter by giving false assurances of membership interests in Alter (with the attendant immigration benefits) and the distributions reflected above. Relying on Polsky's promises and assurances, Bai agreed invest seed capital in Alter through her company called Wingsail Holdings LLC ("Wingsail"). In doing so, Bai was expecting that Wingsail would receive the membership interest in Alter that Polsky was promising, as well as be owed the annual distribution payments Polsky was promising once Alter became financially able to make the payments.

47.     On or about July 27, 2018, Polsky, acting individually and on behalf of Alter as its principal, agent, and manager, drafted and presented Chang and Bai an Alter Operating Agreement, which provided that Wingsail would be the sole seed capital contributor to Alter and would receive a 65% membership interest in Alter, including all

the rights and entitlements that accompany such a majority interest, as required by the E2 visa program. Polsky, leveraging Chang's position of trust with Bai, also promised Wingsail and Bai annual profits and distributions from Alter on a priority basis amounting to at least 8% annual interest on Wingsail's outstanding principal investment, which would accrue until Alter was financially able to make the distributions. However, at the time Polsky made these representations and promises to induce Bai to invest in Alter, he had fraudulent intent in that he never intended on keeping his promises to Bai, Wingsail, or Chang.[2]

48.     Polsky, acting both individually and as principal of Alter, in furtherance of his fraud scheme and based upon the promises reflected above, caused Wingsail to invest the following sums (nearly $1 Million dollars in total) on the following dates into bank account(s) controlled by Polsky and Alter. Relying on Polsky's false promises (believing them to be true at the time), Wingsail made the following investments directly into accounts controlled by Polsky and Alter:

a.     On or about August 1, 2018, upon Polsky's request for seed capital investment into Alter and relying on Polsky's representations of the benefits to Wingsail detailed above, as well as the trust afforded to Polsky by Wingsail (Bai) on account of Polsky's relationship with Chang, Wingsail invested **$115,000** directly into a bank account controlled by Polsky and Alter;

b.     On or about November 2, 2018, upon Polsky's request for seed capital investment into Alter and relying on Polsky's representations of the benefits to Wingsail detailed above, as well as the trust afforded to Polsky by Wingsail (Bai) on account of Polsky's relationship with Chang, Wingsail invested **$46,000** directly into a bank account controlled by Polsky and Alter;

c.     On or about November 21, 2018, upon Polsky's request for seed capital investment into Alter and relying on Polsky's representations of the benefits to Wingsail

---

[2] Pursuant to Fed. R. Civ. P. 9(b), "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

detailed above, as well as the trust afforded to Polsky by Wingsail (Bai) on account of Polsky's relationship with Chang, Wingsail invested **$20,000** directly into a bank account controlled by Polsky and Alter;

d.     On or about December 13, 2018, upon Polsky's request for seed capital investment into Alter and relying on Polsky's representations of the benefits to Wingsail detailed above, as well as the trust afforded to Polsky by Wingsail (Bai) on account of Polsky's relationship with Chang, Wingsail invested **$256,000** directly into a bank account controlled by Polsky and Alter;

49.     By this point, Wingsail had already invested **$437,000** into the Alter startup—funds put in Polsky's control in reliance on Polsky promises and agreements reflected above. But Polsky desired more capital and needed Chang's trust to convince Wingsail to invest further.

50.     To continue his fraud scheme, on or about December 23, 2018, Polsky sent an email to Chang titled "FINAL VERSIONS" and attached an unsigned document titled "Alter Operating Agreement FINAL.docx." The agreement acknowledged that Wingsail was the sole seed investor in Alter and would be given 65% membership interest in Alter. This represented the last and final understanding of the parties concerning the split of membership interest in Alter.

51.     Polsky separately promised Bai annual profits and distributions from Alter amounting to at least 8% annual interest on Wingsail's outstanding principal investment, which would accrue until Alter was financially able to make the distributions.

52.     At or around the same time, Polksy asked Chang to show Bai the December 23, 2018 Final Version of the Alter Operating Agreement to have Wingsail invest more capital in Alter. At Polsky's direction, Chang showed Bai the Final Alter Operating Agreement and convinced her to have Wingsail invest additional funds in the Alter startup. Polsky himself also told Bai that the Operating Agreement concerning Alter's membership interest in Alter and attendant annual distributions had been finalized and that Wingsail should continue to invest with confidence even providing updates regarding the status and

viability of the business. Wingsail relied on Polsky's statements and assurances and the Alter Operating Agreement to continue investing in the startup. Polsky was lying, however, and the documents and statements he made and presented were made to induce Wingsail to continue investing in Alter without Polsky ever intending to keep his promises.

53.    Relying on Polsky's false promises (believing them to be true at the time), Wingsail invested the following additional sums directly into accounts controlled by Polsky and Alter:

a.    On or about January 10, 2019, upon Polsky's request for seed capital investment into Alter and relying on Polsky's representations of the benefits to Wingsail detailed above, as well as the trust afforded to Polsky by Wingsail (Bai) on account of Polsky's relationship with Chang, Wingsail invested **$149,880** directly into a bank account controlled by Polsky and Alter;

b.    On or about March 1, 2019, upon Polsky's request for seed capital investment into Alter and relying on Polsky's representations of the benefits to Wingsail detailed above, as well as the trust afforded to Polsky by Wingsail (Bai) on account of Polsky's relationship with Chang, Wingsail invested **$119,980** directly into a bank account controlled by Polsky and Alter;

c.    On or about March 27, 2019, upon Polsky's request for seed capital investment into Alter and relying on Polsky's representations of the benefits to Wingsail detailed above, as well as the trust afforded to Polsky by Wingsail (Bai) on account of Polsky's relationship with Chang, Wingsail invested **$24,980** directly into a bank account controlled by Polsky and Alter;

d.    On or about October 25, 2019, upon Polsky's request for seed capital investment into Alter and relying on Polsky's representations of the benefits to Wingsail detailed above, as well as the trust afforded to Polsky by Wingsail (Bai) on account of Polsky's relationship with Chang, Wingsail invested **$199,980** directly into a bank account controlled by Polsky and Alter.

54.    Therefore, to date, relying on Polsky's representations and requests and the

trust afforded to Polsky by Wingsail on account of Polsky's relationship with Chang, Wingsail has invested a total sum of **$931,820** directly into one or more bank accounts controlled by Polsky and Alter.

55. Polsky engaged in the foregoing fraudulent conduct to induce these investments predominantly in and from Orange County, California.

**B.      Polsky's Continuing Fraud as Principal and Manager of Alter, Perpetrated upon Wingsail and Chang**

56. While Polsky agreed to assign the shares of the Alter Entities to Wingsail, as reflected in the Final Alter Operating Agreement he circulated, in reality, he was defrauding Wingsail and Chang, as Polsky never intended on signing the Alter Operating Agreement and giving Wingsail its membership shares or the accrued annual distributions. Rather, Polsky's plan all along was to keep the membership interest and money for himself and the companies he owned and controlled. In other words, Polsky simply stole Wingsail's money, as Wingsail, to this date, has received nothing from Polsky—no shares, no annual distribution, no profits, and not even a return of Wingsail's capital, all of which Wingsail is owed.

57. Polsky has been managing Alter with Michael Castanon ("Castanon") who had also agreed to the Final Alter Operating Agreement and was expected to be a minority member of the Alter startup.

58. From mid to late January 2019, whenever Chang and Wingsail would inquire about receiving the signed Alter Operating Agreement, Polsky would string them along and falsely assure them that the Alter Operating Agreement was securely in place as evidenced by his December 23, 2018 email, and that signatures were an unnecessary formality. Polsky represented that he and Castanon could not sign the Agreement just yet because Castanon was involved in a lawsuit and would need to produce the Agreement reflecting his assets in Alter if the Alter Operating Agreement were signed. This, according to Polsky, would injure Castanon, which would in turn injure Alter and Wingsail's interests because Castanon was a top-level operational manager at Alter, and Polsky said that Chang

and Bai should avoid upsetting Castanon. Polsky gave false assurances that the Final Alter Operating Agreement would be honored regardless of signatures, and that Wingsail and Chang needed to be patient for Castanon's sake. Wingsail (Bai) and Chang relied on these statements and took Polsky at his word. Unfortunately, Polsky was lying and never intended on honoring the promises made to Wingsail, Chang, and Bai.

59.     On May 19, 2019, Wingsail and Chang inquired about the Alter Operating Agreement being signed. Polsky continued to string them along and responded with the same Castanon-litigation excuse, which Wingsail and Chang continued to rely on, putting their trust in Polsky and Alter.

60.     On May 25, 2019, Wingsail and Chang again inquired about the Alter Operating Agreement being signed. Polsky responded with the same excuses, which Wingsail and Chang continued to rely on, not wanting to upset Polsky or Castanon.

61.     From May 2019 through May 2022, Bai, Chang, and Polsky had several conversations similar to the conversations in the preceding paragraphs, and Polsky continued to defraud Wingsail and Chang into believing that the Alter Operating Agreement was securely in place and would be honored when Polsky's actual plan was to fully usurp Wingsail's shares in the Alter Entities and also not pay the distributions owed to Wingsail, or even return the $1 Million capital investment. Polsky's plan was to walk away with it all.

**C.     Polsky's Continuing Fraud as Principal and Manager of SEFED and Alter, Perpetrated upon Wingsail and Chang**

62.     While Polsky was delaying the signing of the Final Alter Operating Agreement with fraudulent intent, he understood that he had made statements in writing evidencing his promises and commitments.

63.     In mid-August 2019, Polsky thus executed an additional fraud scheme to usurp Wingsail's shares in Alter in a different way for himself and his company SEFED. Polsky told Chang and Bai that Alter could go out of business if Wingsail did not quickly invest another $200,000 into Alter.

64.     Thereafter, continuing with his fraud scheme, on August 16, 2019, Polsky proposed that he (Polsky) would invest $100,000 in Alter through his SEFED company in exchange for a pledge agreement from Wingsail that Wingsail's shares in Alter would be forfeited to Polsky and SEFED if Wingsail did not replace SEFED's $100,000 with an approximately $200,000 investment into Alter by August 31, 2019, which was to occur within two weeks. Wingsail and Chang were concerned about the quick timeline and Wingsail's ability to process such a large foreign wire transfer. To allay Wingsail and Chang's concerns, Polsky provided false assurances that the two-week deadline was not a hard deadline, even sending Chang a text message on August 15, 2019, stating, "I don't want to take her equity," to convince Chang (and Wingsail through Chang) that SEFED's pledge agreement was simply a safety net for Polsky and was not intended to affect Wingsail's equity interests in Alter, so long as Wingsail made the investment. Chang and Wingsail relied on Polsky's fraudulent statements believing them to be true.

65.     However, or about August 31, 2019, Wingsail was having issues securing the $200,000 to invest in Alter. Throughout August and September 2019, Polsky told Chang and Wingsail several times that Wingsail could have extra time to make the $200,000 payment, and that Wingsail's shares would not be forfeited to SEFED despite the pledge agreement. For example, on August 19, 2019, Chang shared with Polsky that the Wingsail's wire would be delayed to which Polksy responded, "I'm sure I can make sure that she [Bai (Wingsail)] retains equity" even if the payment is late. Polsky insisted, "I think the answer is she signs the docs and then we try to find a solution whereby we let her keep the equity but mcap gives up profit share," further assuring Chang and, through him, Wingsail that deadline in the pledge agreement should not be taken as a hard deadline. In additional examples, on September 14 and 23, 2019, Polsky continued to request that Bai make the investment with the assurance that Wingsail's shares were protected. Polsky continued to make these representations (albeit fraudulent) to Chang and Bai throughout October 2019. Wingsail, Chang, and Bai relied on these statements, and Chang and Bai continued to work on securing the $200,000 for Alter.

66.     On or about October 25, 2019, relying on Polsky's representations that the late payment would be acceptable and that no adverse consequences to Wingsail would come of it, Wingsail made an investment of approximately $200,000 into Alter, wiring the funds directly into an account controlled by Polsky and Alter. Polsky accepted this payment on behalf of Alter and SEFED without question.

67.     Between October 25, 2019, and June 3, 2022, Chang and Wingsail inquired of Polsky numerous times when the Alter Operating Agreement would be signed. Each time Polsky assured Chang and Wingsail that there was nothing to worry about, and that they should trust Polsky. Polsky assured Chang and Wingsail that there were emails and written agreements from Polsky agreeing to the shares and distributions for Wingsail as reflected in those documents, and that formal signatures were not necessary.

68.     In addition, from at least January 2020 to June 2022, Polksy falsely represented Alter's financial condition as poor to Chang and Wingsail to avoid paying Wingsail's distributions. During this period, Polsky continued to string Bai along telling her that he had no intention of usurping her capital or her shares.

69.     For example, on February 3, 2021, Polsky assured Bai that she would receive the distributions she was promised; he also assured her that her E2 visa benefits were safe, which meant that Wingsail continued to own the 65% membership interest in the Alter Entities, which was the E2 visa requirement the parties had initially agreed upon. At or about this time, Polsky made the same statements to Chang to assure Chang that his and Wingsail's interests were safe and secure, as Polsky had initially promised when the securing the seed capital back in 2018.

70.     On August 31, 2021, Polsky sent Chang an email convincing Chang that the Alter shares would be formally assigned and transferred to Wingsail, as promised. Soon thereafter, Polksy and Chang spoke on the phone about this issue, and Polksy told Chang to assure Bai that her membership interest in Alter was protected, which Chang did at Polsky's direction, and Wingsail relied on. Polsky's statements were false, however, as he had no intention of giving Wingsail its shares, instead wanting to keep those shares for

himself and the companies he owned and controlled.

71.    In furtherance of his fraud scheme, Polsky also started numerous Alter companies (known and unknown to Wingsail, as reflected above) and opened bank accounts that Polsky kept secret from Chang and Wingsail in order to hide Alter's true financial condition and avoid paying Wingsail.

72.    By October 31, 2021, the Alter startup had become tremendously successful, as it was projected to be worth over $45 Million by the end of 2023, and over $65 Million by the end of 2026.

73.    On June 3, 2022, Polsky, in furtherance of his scheme to usurp the lucrative Alter startup, sent Chang a letter making a number of false accusations against Chang.

74.    Chang was shocked by this letter and within days of receiving it, Chang spoke to Polsky about the false accusations and suggested that the two men part ways. Chang insisted, among other things, that Polksy formally give Wingsail its membership shares and also pay the accrued distributions. Polsky responded by saying that Wingsail and Chang had no signed agreement to rely on and no entitlement to any interest in or distributions from the Alter Entities, which, according to Polsky, are owned by Polsky, SEFED, and Polsky's other companies, known and unknown to Wingsail at this time.

75.    Chang was again shocked and reminded Polsky that Chang had proof in writing over the years showing Polsky had been providing assurances that Wingsail's interests in the Alter Entities—namely the 65% membership interest and accrued distributions—were protected and that Chang and Wingsail had relied on Polsky's promises and assurances.

76.    Since then, Chang and Wingsail have requested a number of times that Polsky provide the Alter Entities' operating agreements and financial records, but Polsky refuses to do so, taking the position that Wingsail, Bai, and Chang have no rights to those records.

77.    In October 2022, Polsky filed a frivolous lawsuit against Chang to take over the management of their MCAP company, which has an agreement to manage Wingsail's investments and process the E2 visa based on Wingsail's investment. To be clear, in

-18-

addition to promising Wingsail financial benefits, Polsky also promised Wingsail (Bai) immigration benefits to induce Wingsail to invest in Alter and used this hook to string along Wingsail for years.

78. Polsky, however, has engaged in unlawful and deceptive conduct against Wingsail, including, for example, fraud, breach of fiduciary duty, conversion, breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and violations of the California Corporations Code, as described above and in the claims below.

79. Wingsail would thus be harmed by Polsky's intended takeover of MCAP because it would result in Wingsail's investments being managed by a fraudster and, in turn, result not only in financial loss but also loss of the E2-visa benefits.

80. From October to December 2022, Chang tried to reason with Polsky and have Polsky back away from his fraud, but Polsky's greed was unrelenting.

81. Unsuccessful in his efforts, Chang discussed Polsky's fraud with Bai in or about the end of December 2022.

82. Since then, Polksy has made threatening statements to Chang and Bai to intimidate them to abandon their rights.

83. As concerning the foregoing acts of fraud, Polsky was acting not only on behalf of himself but also as principal and part-owner of the Alter Entities and SEFED. Polksy engaged in the foregoing acts of fraud predominantly in and from Orange County, California.

## V.    DISCOVERY RULE & FRAUDULENT CONCEALMENT

84. As part of their fraud scheme, Polsky, and through him, Alter and SEFED, actively misled, made material misrepresentations to, and concealed material information from Bai, Chang, and Wingsail. Polsky's misrepresentations and concealment led Wingsail to proceed under the false impression that its membership interest in Alter and distributions owed by Alter were secure. It was not until the end of December 2022 that Bai, the sole member of Wingsail and foreign national, first learned of Polsky's fraud. Bai could not have learned of the fraud prior to this because Polsky had actively concealed it as part of

his fraud scheme. Therefore, Wingsail did not discover and could not have discovered through the exercise of reasonable diligence the true nature and full scope of Polsky, Alter, and SEFED's fraud against Wingsail until the end of December 2022, thereby tolling any otherwise applicable statute of limitations.

85.     Defendants are under a continuous duty to disclose to Plaintiff the true character, quality, and nature of their tortious acts against Plaintiff.

## VI.   RELATION TO PRIOR CLAIMS

86.     Plaintiff Wingsail initially pursued crossclaims through Chang, filed on September 29, 2023, in the matter of *Polsky v. Chang, et al.*, Case No. 8:23-CV-00225-CJC-ADS(x) (the "Chang" Action). But based upon certain technical objections raised by the cross-defendants in that case (Defendants in this case) in a motion to dismiss, Plaintiff pursues its own claims in this Action here, which overcomes those technical objections and is related to and relates back to the Chang Action.

## VII.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

FRAUD BY INTENTIONAL MISREPRESENTATION
(*Against All Defendants*)

87.     Plaintiff Wingsail ("Plaintiff" or "Wingsail") realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

88.     Plaintiff brings this claim of fraud by intentional misrepresentation under California state law against all Defendants, including Andrew Polsky ("Polsky"), Alter Management LLC, Alter Health Group, Inc., Alter Life Sciences, Inc., Alter Life Sciences, LLC, Cambridge Mental Health Management, LLC (collectively, the "Alter Entities" or "Alter"), SEFED, and DOES 1 through 10, all collectively, "Defendants" for purposes of this claim.

89.     At all times relevant to this Complaint, Polsky was acting both individually to unlawfully benefit himself and as a top-level corporate principal, agent, and manager of

the Alter Entities and SEFED to unlawfully increase his own shares in and control of Alter at the expense of Plaintiff, who was promised and entitled to the majority shares, as well as distributions, dividends, and profits, as the sole seed investor having invested nearly $1 Million dollars in the startup in reliance on Polsky's representations, as detailed in the general allegations above, including, but not limited to, for example, in paragraphs 43, 46, 47, 48, 50, 51, 52, 53, 58, 59, 60, 64, 65, and 77.

90.     At all times relevant to this Complaint, Polsky actively engaged in, participated in, aided and abetted, and/or furthered, individually and as corporate principal, agent, and manager of the Alter Entities and SEFED, an intentional fraudulent scheme, whereby he deliberately and fraudulently induced Wingsail to invest approximately $1 Million in seed capital and financing for the Alter startup. Polsky agreed that in exchange for Wingsail's investment, Wingsail would be entitled to a 65% membership interest in the Alter Entities (along with all the rights and entitlements that accompany such a majority interest), as well as be owed annual distributions and profits from the Alter Entities and receive support and assistance in ensuring that the E2 immigration benefits were available for processing, as described in the general allegations above.

91.     At all times relevant, in reliance on Polsky's representations, Wingsail invested nearly $1 Million in seed capital to Alter, making the investment directly into accounts controlled by Polsky and Alter, as summarized in paragraphs 48, 53, and 66.

92.     At the times Defendants made the promises and representations to Wingsail, Defendants knew that they had no intention of following through. Defendants nevertheless intended that Wingsail rely on the false promises and representations, as detailed in the general allegations above. Had Wingsail known the truth, it would not have made the investments it did and/or would have insisted on having a signed Alter Operating Agreement with the provisions that Polsky promised, as well as other corporate documents and financial records.

93.     Wingsail's will was overborne by Defendants' fraud, and Wingsail reasonably trusted and relied on Defendants' promises to its own detriment. Wingsail continues to be

deprived of the Alter membership shares and distributions to which it is entitled.

94.    To be clear, Defendants simply stole Wingsail's money as Wingsail, to this date, has received nothing from its million-dollar investment—no shares, no distribution, no profits, no dividends, and not even a return of Wingsail's capital.

95.    As a result, Defendants' intentional, willful, and malicious fraud and deceit directly, proximately, and substantially caused Wingsail to suffer significant injury and damages that continue to accrue, in an amount believed to be in excess of $30.5 Million in compensatory damages alone.

96.    Defendants undertook the aforesaid illegal acts intentionally and with conscious disregard of the rights of Wingsail, and did so with fraud, oppression, and/or malice, as detailed in the general allegations section. This despicable conduct subjected Wingsail to cruel and unjust hardship so as to justify an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future. Therefore, Wingsail is also entitled to punitive damages against Defendants in an amount to be determined at trial.

WHEREFORE, Plaintiff Wingsail prays for relief as set forth below.

<u>SECOND CLAIM FOR RELIEF</u>

FRAUDULENT CONCEALMENT BY DECEPTIVE DISCLOSURE

(*Against All Defendants*)

97.    Plaintiff Wingsail ("Plaintiff" or "Wingsail") realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

98.    Plaintiff brings this claim of fraudulent concealment by deceptive disclosure under California state law against all Defendants, including Andrew Polsky ("Polsky"), Alter Management LLC, Alter Health Group, Inc., Alter Life Sciences, Inc., Alter Life Sciences, LLC, Cambridge Mental Health Management, LLC (collectively, the "Alter Entities" or "Alter"), SEFED, and DOES 1 through 10, all collectively, "Defendants" for purposes of this claim.

99.    At all times relevant to this Complaint, Polsky actively engaged in,

participated in, aided and abetted, and/or furthered, individually and as corporate principal, agent, and manager of the Alter Entities and SEFED, a fraudulent scheme to induce Wingsail into a false sense of security and usurp its rightful membership interest, along with its distributions, dividends, and profits, which conduct constitutes fraudulent concealment by deceptive disclosure.

100. At all times relevant to this Complaint, Polsky was acting both individually to unlawfully benefit himself and as a top-level corporate principal, agent, and manager of the Alter Entities and SEFED to unlawfully increase his own shares in and control of Alter at the expense of Plaintiff, who was promised and entitled to the majority shares, as well as distributions, dividends, and profits, as the sole seed investor having invested nearly $1 Million in the startup.

101. At all times relevant to this Complaint, Defendants (i.e., Polsky and the entity Defendants through him) disclosed some facts to Wingsail but intentionally and willfully failed to disclose other material facts, making their disclosure deceptive; Defendants also intentionally and willfully failed to disclose certain facts that were known only to them and that Wingsail could not have discovered; Defendants also willfully prevented Wingsail from discovering certain facts by providing false assurances, all of which is detailed in the general allegations section above. Defendants did this deliberately to fraudulently induce Wingsail into a false sense of security, intending all along to renege on their promises and usurp Wingsail's rights and entitlements. Defendants concealed from Wingsail the following representative material facts, among others:

    a. That Defendants were causing Wingsail to invest seed capital in Alter on the basis of false promises of membership interests, distributions, and profit-sharing, which Defendants never intended to keep, as detailed above in the general allegations;

    b. That Defendants intended to and did usurp and convert Wingsail's 65% membership interest in the Alter Entities;

    c. That Defendants intended to and did usurp and convert the distributions and profits owed to Wingsail by Defendants;

d.    That Defendants intended to and did usurp and convert Wingsail's principal investments in Alter;

e.    That Defendants started a web of Alter Entities to convolute the money trail and dilute shares to deprive Wingsail of its rights as a seed capital investor in the Alter startup;

f.    That Defendants were fraudulently taking Wingsail into a position of trust as Alter's caretaker but never intended on providing Wingsail the promised benefits or even Alter's corporate documents and financial records to which Wingsail was entitled, including, but not limited to, operating agreements and amendments, bylaws, corporate minutes, bank records, tax records, and emails, texts, and other communications by Alter employees and consultants concerning the business activities of the Alter Entities;

g.    To date, Defendants have actively concealed and failed to disclose to Wingsail Alter's corporate documents and financial records to which Wingsail is entitled, including, but not limited to, operating agreements and amendments, bylaws, corporate minutes, bank records, tax records, and emails, texts, and other communications by Alter employees and consultants concerning the business activities of the Alter Entities, despite requests by Wingsail after Polsky's fraud was discovered by Wingsail in or about the end of December 2022.

102.    Wingsail did not know of the concealed facts and did not understand or appreciate the fraud being perpetrated by Defendants and was in fact fraudulently induced by Defendants into investing in Alter and trusting Polsky to run the startup while keeping his promises to Bai, Chang, and Wingsail, as detailed in the general allegations section above. Had Wingsail known the truth, it would not have made the investments it did and/or would have insisted on having a signed Alter Operating Agreement with the provisions that Polsky promised along with all corporate documents and financial records identified above.

103.    Wingsail's will was overborne by Defendants' fraud, and Wingsail reasonably trusted and relied on Defendants' promises and concealment of material information to its own detriment, causing Wingsail significant injury. Wingsail continues to be deprived of

the Alter membership shares and distributions to which it is entitled.

104. To be clear, Defendants simply stole Wingsail's money as Wingsail, to this date, has received nothing from its million-dollar investment—no shares, no distribution, no profits, no dividends, and not even a return of Wingsail's capital.

105. As a direct and proximate result of Defendants' fraud, Wingsail has been harmed and suffered damages in an amount to be proven at trial, in an amount believed to be in excess of $30.5 Million in compensatory damages alone.

106. Defendants undertook the aforesaid illegal acts intentionally and with conscious disregard of the rights of Wingsail, and did so with fraud, oppression, and/or malice, as detailed in the general allegations section. This despicable conduct subjected Wingsail to cruel and unjust hardship so as to justify an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future. Therefore, Wingsail is also entitled to punitive damages against Defendants in an amount to be determined at trial.

WHEREFORE, Plaintiff Wingsail prays for relief as set forth below.

<u>THIRD CLAIM FOR RELIEF</u>

FRAUDULENT CONCEALMENT BY FIDUCIARY

(*Against Defendant Andrew Polsky*)

107. Plaintiff Wingsail ("Plaintiff" or "Wingsail") realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

108. Plaintiff brings this claim of fraudulent concealment by fiduciary under California state law against Defendant Andrew Polsky ("Defendant" or "Polsky" for purposes of this claim).

109. At all times relevant to this Complaint, Polsky actively engaged in, participated in, aided and abetted, and/or furthered, individually and as corporate principal, agent, and manager of the Alter Entities, a fraudulent scheme to induce Wingsail into a false sense of security and usurp its rightful membership interest, along with its distributions, dividends, and profits, which conduct constitutes fraudulent concealment by

a fiduciary.

110. At all times relevant to this Complaint, Polsky, due to his status as (1) a Director and officer of the Alter Entities vis-à-vis Wingsail, who was a member/shareholder and investor, and (2) a co-member/shareholder of the Alter Entities with Wingsail, owed fiduciary duties to Wingsail. Indeed, Wingsail was the sole seed investor in Alter entitled to 65% membership interest in the Alter startup (along with distributions, dividends, and profits) in exchange for nearly $1 Million in seed capital, which Wingsail did provide. Hence, vis-à-vis Wingsail, Polsky was in a position of special knowledge and trust with the opportunity to take undue advantage of and exercise undue influence over Wingsail. Polsky owed Wingsail a fiduciary duty to be honest with Wingsail, to not conceal material information from or defraud Wingsail, and to be loyal to Wingsail.

111. At all times relevant to this Complaint, Polsky misused his relationship of special knowledge, control, and trust by willfully failing to disclose numerous material facts and making numerous affirmative misrepresentations to Wingsail in order to unlawfully benefit himself and increase his own shares in and control of Alter at the expense of Wingsail. Polsky did this deliberately to fraudulently induce Wingsail into a false sense of security, intending all along to renege on his promises and usurp Wingsail's rights and entitlements. Polsky engaged in self-dealing and concealed from Wingsail the following representative material facts, among others:

      a.     That Polsky was causing Wingsail to invest seed capital in Alter on the basis of false promises of membership interest, distributions, and profit-sharing, which Defendants never intended to keep, as detailed above in the general allegations;

      b.     That Polsky intended to and did usurp and convert Wingsail's 65% membership interest in the Alter Entities;

      c.     That Polsky intended to and did usurp and convert the distributions and profits owed to Wingsail by Alter;

      d.     That Polsky intended to and did usurp and convert Wingsail's principal

investments in Alter;

e.    That Polsky started a web of Alter Entities to convolute the money trail and dilute shares to deprive Wingsail of its rights as a seed capital investor in the Alter startup;

f.    That Polksy was fraudulently taking Wingsail into a position of trust as Alter's caretaker but never intended on providing Wingsail the promised benefits or even Alter's corporate documents and financial records to which Wingsail was entitled, including, but not limited to, operating agreements and amendments, bylaws, corporate minutes, bank records, tax records, and emails, texts, and other communications by Alter employees and consultants concerning the business activities of the Alter Entities.

g.    To date, Polsky has actively concealed and failed to disclose to Wingsail Alter's corporate documents and financial records to which Wingsail is entitled, including, but not limited to, operating agreements and amendments, bylaws, corporate minutes, bank records, tax records, and emails, texts, and other communications by Alter employees and consultants concerning the business activities of the Alter Entities, despite requests by Wingsail after Polsky's fraud was discovered by Wingsail in or about the end of December 2022.

112.    Wingsail did not know of the concealed facts and did not understand or appreciate the fraud being perpetrated by Polsky and was in fact fraudulently induced by Polsky into investing in Alter and trusting Polsky to run the startup while keeping his promises to Bai, Chang, and Wingsail, as detailed in the general allegations section above. Had Wingsail known the truth, it would not have made the investments it did and/or would have insisted on having a signed Alter Operating Agreement with the provisions that Polsky promised along with all corporate documents and financial records identified above.

113.    Wingsail's will was overborne by Polsky's fraud, and Wingsail reasonably relied on Polsky's promises and concealment of material information to its own detriment, causing Wingsail significant injury. Wingsail continues to be deprived of the Alter membership shares and distributions to which it is entitled.

114.   To be clear, Polsky simply stole Wingsail's money as Wingsail, to this date, has received nothing from its million-dollar investment—no shares, no distribution, no profits, no dividends, and not even a return of Wingsail's capital.

115.   As a direct and proximate result of Defendants' fraud, Wingsail has been harmed and suffered damages in an amount to be proven at trial, in an amount believed to be in excess of $30.5 Million in compensatory damages alone.

116.   Polsky undertook the aforesaid illegal acts intentionally and with conscious disregard of the rights of Wingsail, and did so with fraud, oppression, and/or malice, as detailed in the general allegations section. This despicable conduct subjected Wingsail to cruel and unjust hardship so as to justify an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future. Therefore, Wingsail is also entitled to punitive damages against Polsky in an amount to be determined at trial.

WHEREFORE, Plaintiff Wingsail prays for relief as set forth below.

<u>FOURTH CLAIM FOR RELIEF</u>

BREACH OF FIDUCIARY DUTY

*(Against Defendant Andrew Polsky)*

117.   Plaintiff Wingsail ("Plaintiff" or "Wingsail") realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

118.   Plaintiff brings this claim of breach of fiduciary duty under California state law against Defendant Andrew Polsky ("Defendant" or "Polsky" for purposes of this claim).

119.   At all times relevant to this Complaint, Polsky , due to his status as (1) a Director and officer of the Alter Entities vis-à-vis Wingsail, who was a member/shareholder and investor, and (2) a co-member/shareholder of the Alter Entities with Wingsail, owed fiduciary duties to Wingsail. Indeed, Wingsail was the sole seed investor in Alter entitled to 65% membership interest in the Alter startup (along with distributions, dividends, and profits) in exchange for nearly $1 Million in seed capital,

Complaint of Wingsail Holdings, LLC

which Wingsail did provide. Hence, vis-à-vis Wingsail, Polsky was in a position of special knowledge and trust with the opportunity to take undue advantage of and exercise undue influence over Wingsail. Polsky owed Wingsail a fiduciary duty to be honest with Wingsail and to not conceal material information from or defraud Wingsail.

120. Polsky breached his fiduciary duty to Wingsail by engaging in the acts of fraud and deception detailed in the general allegations section and Claims 1 through 3 above.

121. Polsky further breached his fiduciary duty to Wingsail by engaging in acts to increase his own shares in and control of Alter at the expense of Wingsail, who was promised and entitled to the majority shares, as well as distributions, dividends, and profits, as the sole seed investor having invested nearly $1 Million dollars in the startup.

122. To be clear, Polsky simply stole Wingsail's money as Wingsail, to this date, has received nothing from its million-dollar investment—no shares, no distribution, no profits, no dividends, and not even a return of Wingsail's capital.

123. Polsky's breach of fiduciary duty directly, proximately, and substantially caused Wingsail to suffer significant injury and damages that continue to accrue.

124. As a direct and proximate result of Defendant's breach of fiduciary duty, Wingsail has been harmed and suffered damages in an amount to be proven at trial, in an amount believed to be in excess of $30.5 Million in compensatory damages alone.

125. Polsky undertook the aforesaid illegal acts intentionally and with conscious disregard of the rights of Wingsail, and did so with fraud, oppression, and/or malice, as detailed in the general allegations section. This despicable conduct subjected Wingsail to cruel and unjust hardship so as to justify an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future. Therefore, Wingsail is also entitled to punitive damages against Polsky in an amount to be determined at trial.

WHEREFORE, Plaintiff Wingsail prays for relief as set forth below.

# FIFTH CLAIM FOR RELIEF

## CONVERSION

### (*Against Andrew Polsky and SEFED*)

126.   Plaintiff Wingsail ("Plaintiff" or "Wingsail") realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

127.   Plaintiff brings this claim of conversion under California state law against Andrew Polsky ("Polsky") and SEFED (collectively, "Defendants" for purposes of this claim).

128.   Polsky, acting individually and as corporate principal, agent, and manager of the Alter Entities, induced Wingsail to invest approximately $1 Million in seed capital and financing for the Alter startup. Polsky agreed that in exchange for Wingsail's investment, Wingsail would be entitled to a 65% membership interest in the Alter Entities (along with all the rights and entitlements that accompany such a majority interest), as well as be owed annual distributions and profits from the Alter Entities, as described in the general allegations above.

129.   Wingsail owned, possessed, and had a right to possess a 65% membership interest in the Alter startup (including all related Alter Entities), along with all the rights and entitlements that accompany such a majority interest, as well as annual distributions and profits from the Alter Entities, as described in the general allegations above, as well as Wingsail's principal investment (collectively referred to as "Wingsail's Property").

130.   On or about August 16, 2019, Polsky, acting individually and as corporate principal, agent, and manager of Alter and SEFED, represented that Alter was in financial trouble and asked Wingsail to pledge its membership interest in Alter to SEFED, which would loan Alter $100,000 until Wingsail was able to invest approximately $200,000 in capital and financing for the Alter startup. Upon Polsky's request, on or about October 25, 2019, Wingsail invested approximately $200,000 into the Alter startup, expecting its Alter shares and all rights to be granted as promised. Polksy, however, refused to give Wingsail

the Alter shares, and the distributions, dividends and profits due to Wingsail, and has even refused to share the corporate documents and financial records of Alter to which Wingsail is entitled.

131. Polsky further refused to share with Wingsail corporate documents and financial records of the Alter Entities even though Wingsail is entitled to these documents and records and has requested them since discovering Polsky's fraud, conversion, and breach of fiduciary duty at or about the end of December 2022.

132. Polsky substantially interfered with Wingsail's Property by knowingly and intentionally taking possession of Wingsail's Property, preventing Wingsail from having access to its Property, destroying and wasting Wingsail's Property, and refusing to return Wingsail's Property after Wingsail demanded return.

133. To be clear, Defendants simply stole Wingsail's money, as Wingsail, to this date, has received nothing from its million-dollar investment—no shares, no distribution, no profits, no dividends, and not even a return of Wingsail's capital.

134. Wingsail did not consent to Defendants' deprivation of Wingsail's Property.

135. Wingsail was harmed by Defendants' deprivation of Wingsail's Property.

136. Defendants' conduct was a substantial factor in causing Wingsail's harm, as detailed in the general allegations section as well as the claims alleged herein.

137. As a direct and proximate result of Defendants' conversion, Wingsail has been harmed and suffered damages in an amount to be proven at trial, in an amount believed to be in excess of $30.5 Million in compensatory damages alone.

138. Polsky, individually and on behalf of SEFED, undertook the aforesaid illegal acts intentionally and with conscious disregard of the rights of Wingsail, and did so with fraud, oppression, and/or malice, as detailed in the general allegations section. This despicable conduct subjected Wingsail to cruel and unjust hardship so as to justify an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future. Therefore, Wingsail is also entitled to punitive damages against Polsky in an amount to be determined at trial.

WHEREFORE, Plaintiff Wingsail prays for relief as set forth below.

SIXTH CLAIM FOR RELIEF

BREACH OF ORAL CONTRACT

(*Against All Defendants*)

139.  Plaintiff Wingsail ("Plaintiff" or "Wingsail") realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

140.  Plaintiff brings this claim of breach of oral contract under California state law against all Defendants, including Andrew Polsky ("Polsky"), Alter Management LLC, Alter Health Group, Inc., Alter Life Sciences, Inc., Alter Life Sciences, LLC, Cambridge Mental Health Management, LLC (collectively, the "Alter Entities" or "Alter"), and SEFED, and DOES 1 through 10, all collectively, "Defendants" for purposes of this claim.

141.  On or about July 27, 2018, Polsky, acting individually and on behalf of Alter as its principal, agent, and manager, entered into an oral contract with Wingsail, agreeing in the presence of both Chang and Bai that, in exchange for Wingsail's capital investment into the Alter startup, Wingsail would receive a 65% membership interest in Alter, including all the rights and entitlements that accompany such a majority interest, creating eligibility for the E2 visa program. Polsky confirmed this agreement in writing in a draft Alter Operating Agreement Polsky showed to Chang and Bai on or about July 27, 2023, and again in a Final Alter Operating Agreement Polksy showed to Chang and Bai on December 23, 2018, firmly committing to Wingsail 65% shares in the Alter Entities.

142.  On or about July, 31, 2018, Polsky, acting individually and on behalf of Alter as its principal, agent, and manager, also agreed to provide to Wingsail annual profits and distributions from Alter on a priority basis amounting to at least 8% annual interest on Wingsail's outstanding principal investment, which would accrue until Alter was financially able to make the distributions.

143.  Pursuant to these agreements, Wingsail invested a total of approximately $1 Million in seed capital to the Alter startup, fully satisfying Wingsail's obligations.

144. On or about August 16, 2019, Polsky, acting individually and as corporate principal, agent, and manager of Alter and SEFED, represented that Alter was in financial trouble and asked Wingsail to pledge its membership interest in Alter to SEFED, which would loan Alter $100,000 until Wingsail was able to invest approximately $200,000 in capital and financing for the Alter startup. Upon Polsky's request, on or about October 25, 2019, Wingsail invested approximately $200,000 into the Alter startup, fully satisfying Wingsail's obligations, expecting its Alter shares and all rights to be granted, as promised by Defendants.

145. Defendants, however, acting through Polsky, breached the agreements identified above, refusing to give Wingsail its Alter shares, as well as the distributions, dividends, and profits due to Wingsail, and even refusing to share the corporate documents and financial records of Alter to which Wingsail is entitled as a majority shareholder.

146. In breaching the agreements, Defendants simply stole Wingsail's money, as Wingsail, to this date, has received nothing from its million-dollar investment—no shares, no distribution, no profits, no dividends, and not even a return of Wingsail's capital.

147. Defendants' breach of contract directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue.

148. As a direct and proximate result of Defendants' conversion, Wingsail has been harmed and suffered damages in an amount to be proven at trial, in an amount believed to be in excess of $30.5 Million in compensatory damages alone.

WHEREFORE, Plaintiff Wingsail prays for relief as set forth below.

<u>SEVENTH CLAIM FOR RELIEF</u>

BREACH OF THE IMPLIED COVENANT

OF GOOD FAITH AND FAIR DEALING

(*Against All Defendants*)

149. Plaintiff Wingsail ("Plaintiff" or "Wingsail") realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

150. Plaintiff brings this claim of breach of the implied covenant of good faith and fair dealing under California state law against all Defendants, including Andrew Polsky ("Polsky"), Alter Management LLC, Alter Health Group, Inc., Alter Life Sciences, Inc., Alter Life Sciences, LLC, Cambridge Mental Health Management, LLC (collectively, the "Alter Entities" or "Alter"), SEFED, and DOES 1 through 10, all collectively, "Defendants" for purposes of this claim.

151. On or about July 27, 2018, Polsky, acting individually and on behalf of Alter as its principal, agent, and manager, into an agreement, which provided that in exchange for Wingsail's capital investment into the Alter startup, Wingsail would receive a 65% membership interest in Alter, naturally including all the rights and entitlements that accompany such a majority interest. Polsky confirmed this agreement in writing again on December 23, 2018.

152. On or about July, 31, 2018, Polsky, acting individually and on behalf of Alter as its principal, agent, and manager, also agreed to provide to Wingsail annual profits and distributions from Alter on a priority basis amounting to at least 8% annual interest on Wingsail's outstanding principal investment, which would accrue until Alter was financially able to make the distributions.

153. Pursuant to these agreements, Wingsail invested a total of approximately $1 Million in seed capital to the Alter startup, fully satisfying Wingsail's obligations.

154. On or about August 16, 2019, Polsky, acting individually and as corporate principal, agent, and manager of Alter and SEFED, represented that Alter was in financial trouble and asked Wingsail to pledge its membership interest in Alter to SEFED, which would loan Alter $100,000 until Wingsail was able to invest approximately $200,000 in capital and financing for the Alter startup. Upon Polsky's request, on or about October 25, 2019, Wingsail invested approximately $200,000 into the Alter startup, expecting its Alter shares and all rights to be granted, as promised by Defendants.

155. Based on the foregoing, Wingsail did all, or substantially all of the significant things that the agreements (i.e., contracts) required Wingsail to do.

156.   In other words, all conditions required for Defendants' performance had occurred.

157.   Nevertheless, Defendants breached their agreements with Wingsail by engaging in the bad faith conduct detailed above in the general allegations section and preceding claims to usurp Wingsail's rights and entitlements and deprive Wingsail of the benefits of the agreements.

158.   In breaching the agreements, Defendants simply stole Wingsail's money, as Wingsail, to this date, has received nothing from its million-dollar investment—no shares, no distribution, no profits, no dividends, and not even a return of Wingsail's capital.

159.   By engaging in this conduct, Defendants did not act fairly and in good faith.

160.   Defendants' breach of contract directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue.

161.   As a direct and proximate result of Defendants' conversion, Wingsail has been harmed and suffered damages in an amount to be proven at trial, in an amount believed to be in excess of $30.5 Million in compensatory damages alone.

WHEREFORE, Plaintiff Wingsail prays for relief as set forth below.

<u>EIGHTH CLAIM FOR RELIEF</u>

UNJUST ENRICHMENT

(*Against All Defendants*)

162.   Plaintiff Wingsail ("Plaintiff" or "Wingsail") realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

163.   Plaintiff brings this restitution claim for relief based on unjust enrichment under California state law against all Defendants, including Andrew Polsky ("Polsky"), Alter Management LLC, Alter Health Group, Inc., Alter Life Sciences, Inc., Alter Life Sciences, LLC, Cambridge Mental Health Management, LLC (collectively, the "Alter Entities" or "Alter"), SEFED, and DOES 1 through 10, all collectively, "Defendants" for purposes of this claim.

164. At all times relevant to this Complaint, Polsky actively engaged in, participated in, aided and abetted, and/or furthered, individually and as corporate principal, agent, and manager of the Alter Entities and SEFED, a fraudulent scheme to induce Wingsail into a false sense of security and usurp its rightful membership interest, along with its distributions, dividends, and profits, which conduct constitutes fraudulent concealment by deceptive disclosure.

165. At all times relevant to this Complaint, Polsky was acting both individually to unlawfully benefit himself and as a top-level corporate principal, agent, and manager of the Alter Entities and SEFED to unlawfully increase his own shares in and control of Alter at the expense of Plaintiff, who was promised and entitled to the majority shares, as well as distributions, dividends, and profits, as the sole seed investor having invested nearly $1 Million dollars in the startup.

166. As detailed above, Defendants actively engaged in, participated in, agreed to, aided and abetted, conspired in, and/or furthered a scheme by which they were unjustly enriched to the detriment of Wingsail.

167. But Defendants simply stole Wingsail's money, as Wingsail, to this date, has received nothing from its million-dollar investment—no shares, no distribution, no profits, no dividends, and not even a return of Wingsail's capital.

168. By their wrongful acts and omissions, Defendants induced Wingsail to pay $1 Million. Accordingly, Defendants, and each of them, were unjustly enriched at the expense of and to the detriment of Wingsail and/or while Wingsail was unjustly deprived of its capital, shares, dividends, and profits.

169. Wingsail seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all shares, payments, commissions, profits, benefits, and other compensation obtained by Defendants, and each of them, that rightfully belongs to Wingsail.

WHEREFORE, Plaintiff Wingsail prays for relief as set forth below.

**NINTH CLAIM FOR RELIEF**

FAILURE TO PROVIDE CORPORATE & COMPANY RECORDS

(CAL. CORP. CODE §§ 1500 et seq, 1600 et seq, & 17701.01 et seq.)

(*Against Defendant Andrew Polsky and the Alter Entities*)

170.   Plaintiff Wingsail ("Plaintiff" or "Wingsail") realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

171.   Plaintiff brings this claim of failure to provide corporate records under the California Corporations Code against all Defendants, including Andrew Polsky ("Polsky"), Alter Management LLC, Alter Health Group, Inc., Alter Life Sciences, Inc., Alter Life Sciences, LLC, Cambridge Mental Health Management, LLC (collectively, the "Alter Entities" or "Alter"), and DOES 1 through 10, all collectively, "Defendants" for purposes of this claim.

172.   Under California Corporations Code sections 1600, 1601, 17701.10, and 17701.13, among others, Wingsail, as a 65% member of the Alter startup (including all Alter Entities known and unknown to Plaintiff), is entitled to corporate documents and financial records, including, for example, all operating agreements and amendments thereto, federal, state, and local income tax or information returns and reports for the six most recent fiscal years, financial statements for the six most recent fiscal years, books and records relating to the internal affairs of the company for the current year and the past four fiscal years, all shareholder and member names and addresses along with identification of shareholdings and voting privileges, accounting books and records and minutes of proceedings of the shareholders and the board and committees of the board, as well as Wingsail's share certificates in all Alter Entities.

173.   At all times relevant to this Complaint, Defendants, through Polsky acting individually and as corporate principal, agent, and manager of the Alter Entities, without justification, have refused to and failed to provide the corporate and company records identified in the preceding paragraph despite demands by Wingsail for the inspection and

provision of said records.

174.   Wingsail has a right to said corporate and company records and has been injured by Defendants' refusal and failure to provide said records.

175.   Wingsail has had to bring this litigation to obtain said corporate and company records.

WHEREFORE, Plaintiff Wingsail prays for relief as set forth below.

<u>TENTH CLAIM FOR RELIEF</u>

DISSOCIATION OF MEMBER AND REMOVAL OF MANAGER

(VIOLATIONS OF CAL. CORP. CODE § 17706.02)

(*Against Defendant Andrew Polsky*)

176.   Plaintiff Wingsail ("Plaintiff" or "Wingsail") realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

177.   Under California Corporations Code section 17706.02, a limited liability company may expel a member if the member (1) engaged, or is engaging, in wrongful conduct that has adversely affected, or will adversely and materially affect, the limited liability company's activities; (2) willfully or persistently committed, or is willfully and persistently committing, a material breach of the person's duties and obligations under California Corporations Code section 17704.09; or (3) engaged, or is engaging, in conduct relating to the limited liability company's activities that makes it not reasonably practicable to carry on the activities with the person as a member.

178.   As alleged above, Polsky, acting individually and as manager, agent, and principal of companies owned by Polsky, engaged in conduct that satisfies all three subsections of California Corporations Code section 17706.02.

179.   With its 65% membership interest in the Alter Entities, Plaintiff should be permitted to expel Polsky from the membership and management of the Alter Entities, as well as any company owned by him (known or unknown to Plaintiff at this time) for whose benefit Polsky engaged in the conduct described in this Complaint.

WHEREFORE, Plaintiff Wingsail prays for relief as set forth below.

### ELEVENTH CLAIM FOR RELIEF

### DECLARATORY RELIEF

(*Against Defendant Andrew Polsky*)

180.  Plaintiff Wingsail ("Plaintiff" or "Wingsail") realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

181.  Plaintiff brings this claim of declaratory relief from this Court against Defendant Andrew Polsky ("Defendant" or "Polsky" for purposes of this claim).

182.  In October 2022, Polsky filed a frivolous lawsuit against Chang to take over the management of their MCAP company, which has an agreement to manage Wingsail's investments and process the E2 visa based on Wingsail's investment. To be clear, in addition to promising Wingsail financial benefits, Polsky also promised E2 immigration benefits to induce Wingsail to invest in Alter and used this hook to string along Wingsail and Bai for years.

183.  Polsky, however, has engaged in unlawful and deceptive conduct against Wingsail, including, for example, fraud, breach of fiduciary duty, conversion, breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and violations of the California Corporations Code, as described above and in the claims below.

184.  Wingsail would thus be harmed by Polsky's intended takeover of MCAP because it would result in Wingsail's investments being managed by a fraudster and, in turn, result not only in financial loss but also loss of the E2-visa benefits.

185.  Wingsail thus request that this Court declare Polsky unfit to manage any investment made by Wingsail, through MCAP, Alter, or otherwise, and enjoin Polsky from managing any Wingsail investment.

WHEREFORE, Plaintiff Wingsail prays for relief as set forth below.

### VIII.  **PRAYER FOR RELIEF**

WHEREFORE, Wingsail prays that the Court grant judgment against Defendants

as follows:

1.     Compensatory damages in an amount according to proof;

2.     Disgorgement of assets according to proof;

3.     Costs, restitution, and multiple forms of damages under state law;

4.     Punitive and exemplary damages under state law;

5.     Any and all applicable statutory and civil penalties;

6.     Pre- and post-judgment interest on any amounts awarded;

7.     An award of attorneys' fees and costs, including expert costs, as authorized by the California Corporations Code;

8.     Corporate and company records pursuant to the California Corporations Code;

9.     A declaration that all applicable statutes of limitations are tolled under the discovery rule and/or the fraudulent concealment doctrine as alleged in this Complaint, and that Defendants are estopped from relying on any statute of limitations as a defense;

10.    A declaration that Plaintiff is entitled to receive the 65% shares in the Alter Entities;

11.    An order removing Andrew Polsky and entities controlled by him from any management position in Alter, as well as membership in Alter.

12.    An order enjoining Andrew Polsky from managing any investment made by Wingsail, whether directly or as a manager of a company.

13.    An order enjoining Defendants from dissipation of assets and fraudulent transfer to avoid judgment;

14.    Leave to amend this Complaint to conform to the evidence produced in discovery and at trial; and

15.    Any further relief this Court deems just and proper.

/     /     /

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all triable issues.

Dated: December 18, 2023    ALMADANI LAW

         By: */s/ Yasin M. Almadani*
            Yasin M. Almadani, Esq.

            AI LAW

            */s/ Ahmed Ibrahim*
            Ahmed Ibrahim, Esq.

            *Attorneys for Plaintiff*
            *Wingsail Holdings, LLC*

Complaint of Wingsail Holdings, LLC