1   Mani Sheik (SBN 245487)
2   Kimya Liaghat (SBN 328730)
    SHEIK LAW, INC.
3   526 Third St., Ste. A
    San Rafael, CA 94901
4   Tel: (415) 205-8490
5   Email: mani@sheiklaw.us
    Email: kimya@sheiklaw.us
6

7   Attorneys for Plaintiffs
    Wingsail Holdings, LLC and
8   Yunfei "Kristy" Bai

9               **UNITED STATES DISTRICT COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 11   WINGSAIL HOLDINGS, LLC, a Washington Corporation, and YUNFEI "KRISTY" BAI, an individual, <br><br> 13 <br><br> 14              Plaintiffs, <br><br> 15              v. <br><br> 16   ANDREW POLSKY, an individual, and SEFED, a California Corporation, and DOES 1 through 10, <br><br> 18              Defendants. <br><br> 19 <br><br> 20 <br><br> 21 | Case No. 8:23-CV-02398-JWH-DFM <br><br> **Plaintiffs' Opposition To Defendants' Motion To Dismiss Second Amended Complaint** <br><br> Judge: Hon. John W. Holcomb <br><br> Date:         February 28, 2025 <br> Time:         9:00 a.m. <br> Courtroom:    9D <br><br> Date Action Filed:  August 23, 2024 <br> Trial Date:         December 1, 2025 |

22

23

24

25

26

27

28

1

## **Table of Contents**

I.    Introduction .................................................................................................. 5

II.   Factual Background ...................................................................................... 6

III.  Legal Standard For A Motion To Dismiss ................................................ 10

IV.   Argument ................................................................................................... 12

A.    Wingsail's September 29, 2023 Counterclaim Against Defendants In The Related Polsky Action Refute Defendants' Statute Of Limitations Arguments 12

B.    Plaintiffs' Claims Are Not Time Barred ............................................. 13

1.  The Breach Of Fiduciary Duty Claim Is Timely ....................... 13

2.  The Constructive Fraud Claim Is Timely.................................... 14

3.  The Fraud Claim Is Timely ......................................................... 16

4.  The Promissory Estoppel/Waiver Claim Is Timely ................... 16

5.  The Rescission Claim Is Timely ................................................. 17

6.  The Conversion Claim Is Timely................................................ 18

7.  The Theft Claim Is Timely.......................................................... 18

C.    Plaintiffs' Claims For Conversion, Unjust Enrichment, And Violation Of The Unfair Competition Law Are Sufficiently Pled.................................. 19

1.  The Conversion Claim Asserts Sums Capable For Identification .............. 19

2.  Unjust Enrichment/Constructive Trust Claim Can Stand Alone ................ 19

3.  The Unfair Business Practices Claim Is Not A "Shotgun Pleading".......... 21

D.    Defendants' Fraudulent Concealment And The Discovery Rule Toll The Statute Of Limitations ...................................................................... 22

1.  The Fraudulent Concealment Doctrine Tolls The Statutes Of Limitation.. 22

2.  The Discovery Rule Also Tolls The Statutes Of Limitation ...................... 24

V.    Conclusion ................................................................................................. 24

1

## <u>Table of Authorities</u>

2    <u>Cases</u>

3    *Ashcroft v. Iqbal,*

4       556 U.S. 662 (2009) ................................................................................... 11

5    *Baker v. Beech Aircraft Corp.,*

6       39 Cal.App.3d 315 (1974)................................................................... 22, 24

7    *Bell Atlantic Corp. v. Twombly,*

8       550 U.S. 544, 570 (2007) .................................................................... 11

9    *Doshi v. eCommission Sols., LLC,*

10      2018 WL 4562628 (S.D. Cal. 2018).................................................. 11

11   *ESG Cap. Partners, LP v. Stratos,*

12      828 F.3d 1023 (9th Cir. 2016) ............................................................ 20

13   *Forman v. Davis,*

14      371 U.S. 178 (1962) ........................................................................... 12

15   *Fox v. Ethicon Endo-Surgery, Inc.,*

16      35 Cal.4th 797 (2005)......................................................................... 24

17   *Gilligan v. Jamco Development Corp.,*

18      108 F.3d 246 (9th Cir. 1997) .............................................................. 11

19   *Hebbe v. Pliler,*

20      627 F3d 338 (9th Cir. 2010) ............................................................... 11

21   *In re Stable Rd. Acquisition Corp. Sec. Litig.,*

22      2023 WL 11892194 (C.D. Cal. 2023) ............................................... 21

23   *May v. Google LLC,*

24      2024 WL 4681604 (N.D. Cal. 2024)................................................. 18

25   *Monet v. Chase Home Fin., LLC,*

26      2010 WL 2486376 (N.D. Cal. 2010)................................................. 20

27   *Mosher v. Kane*, 784 F.2d 1385 (9th Cir. 1986)................................................. 12

28   *Natomas Gardens Inv. Grp., LLC v. Sinadinos,*

710 F.Supp.2d 1008 (E.D. Cal. 2010) ........................................................................ 19

*Nogart v. Upjohn Co.,*

21 Cal.4th 383 (1999) ........................................................................................... 24

*Rutherford Holdings, LLC v. Plaza Del Rey,*

223 Cal.App.4th 221 (2014) ................................................................................. 21

*Salahutdin v. Valley of California, Inc.,*

24 Cal.App.4th 555 (1994) ................................................................................... 16

*Semegen v. Weidner,*

780 F.2d 727 (9th Cir. 1985) ................................................................................ 11

*Sollberger v. Wachovia Sec., LLC,*

2010 WL 2674456 (C.D. Cal. 2010) .................................................................... 21

*Tu Le v. Prestige Cmty. Credit Union,*

2023 WL 9689133 (C.D. Cal. 2023) .................................................................... 18

*U.S. v. Webb,*

655 F.2d 977 (9th Cir. 1981) ................................................................................ 12

*Vess v. Ciba-Geigy Corp. USA,*

317 F.3d 1097 (9th Cir. 2003) .............................................................................. 11

*Williams v. Boeing Co.,*

517 F.3d 1120 (9th Cir. 2008) .............................................................................. 17

Rules

Fed. R. Civ. Proc. 8(a) ............................................................................................... 10

Fed. R. Civ. Proc. 9(b) ............................................................................................... 11

Misc.

Advisory Comments to FRCP 15(c) ........................................................................... 12

*Polsky v. MCAP Holdings, LLC, et al.* Case No. 8:23-cv-00225-JWH-ADS

(Related Polsky Action) ............................................................................... passim

## I.     Introduction

Defendants' Motion to Dismiss [ECF No. 68 ("Motion")] Plaintiffs' Second Amended Complaint [ECF No. 64 ("SAC")] fails to acknowledge, much less address, the key material factual allegations that refute all of Defendants' arguments, particularly Defendants' main argument that the claims in the SAC are time barred. They are not.

First, Defendants Andrew Polsky and SEFED (together, "Defendants") misstate the accrual date for Plaintiffs Wingsail Holdings, LLC's ("Wingsail") and Kristy Bai's (together, "Plaintiffs") claims. Defendants claim the accrual date is **December 18, 2023**—the date the initial Complaint was filed in **_this_** case. (_See_, _e.g._, Motion, 15:10-12, 24-27) That is incorrect. As explained in the SAC, Wingsail initially pursued its claims against Defendants on **September 29, 2023**, as a plaintiff in the related case _Polsky v. MCAP Holdings, LLC, et al_. Case No. 8:23-cv-00225-JWH-ADS ("Related Polsky Action"). (SAC ¶ 31) Defendants' Motion completely ignores this allegation and point.

Wingsail's counterclaim in the Related Polsky Action, which it pled along with Fu-Shen "Max" Chang ("Chang"), alleged causes of action relating to fraud and breach of fiduciary duty under the same operative facts in the SAC and Plaintiffs' investments in Alter Management, LLC ("Alter"), such that the claims at issue here all relate back to that pleading and date. (Related Polsky Action at ECF No. 42) But based upon technical objections by the counter- and cross-defendants in that case (Defendants in this case) in a motion to dismiss, Wingsail pursued its claims in this separate Action, and later included Bai as a plaintiff, to overcome those objections. (SAC ¶ 31) Therefore, contrary to Defendants' allegations in their Motion, for the purposes of arguments relating to the statute of limitations, **Plaintiffs' claims were initially pursued on September 29, 2023—not December 18, 2023**.

Second, Defendants deflect their wrongdoing by narrowly construing the SAC to focus on conduct related only to certain contracts executed in August 2019 and April 2020—which, not coincidentally, fall outside the applicable statutes of limitations. (Motion, 8:3-7) However, due to Defendants' fraudulent concealment and

misrepresentations that occurred after those dates, Plaintiffs were unaware of the full scope of Defendants' wrongdoing, which give rise to the elements of Plaintiffs' causes of action. (SAC ¶¶ 20-24, 29) The SAC sets forth specific and ongoing communications between the parties to show that Defendants misrepresented and falsely assured Plaintiffs that their ownership interest in Alter remained secure, with specific communications alleged until August 31, 2021. (*Id.*) These misrepresentations concealed material facts and left Plaintiffs ignorant of any misconduct that could form the basis of their claims. Again, Defendants completely ignore, and provide no argument against, these key allegations, particularly paragraphs 21-24 of the SAC, each and all of which describe fraudulent conduct that occurred within three years of the September 29, 2023 accrual date.

Third, for the causes of action that Defendants assert are not properly pled, Defendants improperly summarize the SAC and caselaw, which Plaintiffs address below with both legal and factual support.

In short, the gravamen of Defendants' Motion is that amending the SAC would be futile because the claims are time barred and cannot be cured. Thus, if the claims are not time-barred, which they are not, the Court should deny the Motion in its entirety. Should the Court determine, however, that some elements of the claims of the SAC need supplementation in some manner, the appropriate remedy is dismissal with leave to amend since Plaintiffs can cure any deficiencies in the SAC. In a case such as this, granting the Motion with prejudice would create tremendous injustice by rewarding Defendants, and specifically Polsky, for his multiple acts of improper self-dealing and deception that were all in breach of his duties to Plaintiffs.

## II.    Factual Background

Plaintiffs' SAC adds more facts to the FAC to further expose a scheme by Polsky and SEFED, one of Polsky's many shell companies, to (1) defraud Plaintiffs of nearly $1 million dollars of invested capital, (2) steal Plaintiffs' expected downstream revenue and gains from such investments, and (3) deprive Bai, who is not a U.S. citizen, of the ability to use such capital investments to obtain a U.S. visa through programs offered by the U.S.

governments' foreign entrepreneur investment programs. Indeed, Polsky was the President of MCAP Holdings, LLC ("MCAP"), a company formed to use foreigners' investments in qualifying U.S. businesses to obtain both U.S. visas and investment returns for the investors. (SAC ¶¶ 9-12) Bai hired MCAP to do exactly that for her and created Wingsail as part the plan Polsky recommended, including through a Management and Investments Agreement ("MIA") for MCAP to manage Wingsail's investments in Alter. (*Id.* at ¶ 13)

The complicated history and operation of MCAP is the subject of the additional, on-going litigation in the Related Polsky Action, which was initiated in, and is still before, this Court by Polsky against Chang, his partner in MCAP. In that September 29, 2023 counterclaim that Wingsail and Chang filed in that action, Wingsail alleged the core of its fraud-related and breach of fiduciary duty concerns regarding Polsky and SEFED's covert conduct to convert Plaintiffs' capital investments in Alter into their ownership interest, and thereby take away Bai's ability to obtain a visa through the path MCAP had promised, leading Plaintiffs unable to recoup on their investments. (*Id.* at ¶ 31; *see also*, Related Polsky Action at ECF No. 42)

As described in the SAC, in the middle of 2019, Polsky sought urgent infusion of more capital from Plaintiffs into the visa-program-qualifying business Polsky had pitched to Plaintiffs—a proposed substance abuse and related mental health treatment operation in Southern California that was eventually named Alter[1]. (SAC ¶ 14) When Plaintiffs indicated they were struggling to make the additional investment on Polsky's urgent timeline, he offered, on or around August 16, 2019, to make them a short-term loan of $100,000[2] from SEFED—a company he formed, owned, and controlled—as long as Plaintiffs would agree not only to reimburse that first loan but also pledge to make ***another***

---

[1] As Polsky created multiple, related entities, most of which include the name "Alter" somewhere in their title, the use of "Alter" here should not be viewed as limiting, especially at this stage of the litigation and since discovery is ongoing.

[2] Defendants' Motion states "Polsky offered to loan **$300,000** to Wingsail (through SEFED)." (Motion at 10:2-4 (emphasis added)) That is incorrect; the amount was $100,000. (SAC, ¶ 15)

larger capital infusion two weeks later (another $200,000) ***and*** put **all** of their interest in Alter up as collateral to secure both obligations. (*Id.* at ¶¶ 14-16) In other words, in return for a short-term loan of $100,000, Polsky maneuvered Plaintiffs into pledging their to-date investment of $731,840 to SEFED ***and*** infusing another $300,000 into Alter, all by the end of August 2019—a more than 1,000% (or more than 10:1) return on his investment. (*Id.*)

To get Plaintiffs to agree, Polsky assured Plaintiffs that the deadlines in the Loan and Pledge Agreement ("SEFED Loan Agreement") he required them to sign were soft and that he would not act on it if Plaintiffs could not provide the investments by the August 31, 2019 deadline laid out therein. (*Id.* at ¶ 16) Polsky and Plaintiffs executed the SEFED Loan Agreement, and Plaintiffs invested another approximately $200,000 in Alter, but not until October 2019—well after the August 31 deadline. (*Id.* at ¶17)

Following this cash infusion, Polsky said business was doing well and Alter was making substantial profit, suggesting the financial emergency was over and the fiscal crisis averted. (*Id.* at ¶ 19) Thus, after Plaintiffs' October 2019 cash infusion, Polsky never told Plaintiffs that the remainer of the money due under the SEFED Loan Agreement was needed. Instead, he repeatedly assured them Alter was "making substantial profit." (*Id.* at ¶¶ 19-24)

Polsky did not move to convert Plaintiffs' collateral for nearly seven months. Without informing Plaintiffs, in April 2020, he created an "Agreement To Accept Collateral In Full Satisfaction Of Obligations," signed by MCAP—of which Polsky was President and member—which he backdated to be effective as of December 31, 2019 ("Conversion Agreement"). (*Id.* at ¶ 25) Contemporaneously, and again without informing Plaintiffs, Polsky created and executed an Assignment of Membership Interests agreement, whereby the other members in Alter also assigned their interests to SEFED, and backdated that document to January 1, 2020. The net result of Polsky's activities was twofold: (1) as of April 2020, Polsky had created a paper trail where he had SEFED collect Plaintiffs' collateral attached to the SEFED Loan Agreement and collected all other outstanding membership interests in Alter from the other members so Defendants would own Alter in

its entirety as of January 1, 2020, and (2) Plaintiffs were completely in the dark about all of it, including SEFED's conversion of Wingsail's ownership interest in Alter. That meant as 2020 began, Plaintiffs no longer had E2 visa-program qualifying investments in Alter nor any enforceable contractual claim to recoup any of their actual investments or to protect their rights to any gains from such. (*See id.* at ¶ 25)

Polsky failed to keep Plaintiffs fully and timely informed about what he had done, and intended to do, with the capital investments they made in Alter. For example, Polsky repeatedly told Plaintiffs that their investments and path to a visa remained safe. (*See id.* at ¶¶ 20-24) Polsky's misdirection and misrepresentations hid the impact of his past conduct. Polsky knew what he was doing and that he was breaching the duties he owed Plaintiffs.

Critically for this Motion, discussions between Plaintiffs and Polsky about their capital and the visa process ***continued in late 2020 and 2021***, with Polsky continuing to mislead and misrepresent that he would return Plaintiffs' capital as planned and help Bai secure her visa. (*Id.* at ¶¶ 21-24, 29) For example, on October 8, 2020—i.e., within three years of the accrual date—Bai texted Polsky "How is the Business?". (*Id.* at ¶¶ 21-22) Polsky could have used this occasion to inform (if he believed Plaintiffs did not already know) or confirm (if he believed Plaintiffs already knew) that Plaintiffs had purportedly defaulted on the SEFED Loan Agreement and/or to inform Plaintiffs that, through SEFED, Defendants had already taken Wingsail's interest in Alter. But Polsky did not do so. (*Id.*) Instead, he texted Bai back that "Business is going ok," and that he was working to produce additional revenue opportunities and raise money which "will make the existing business more profitable so we can return capital to you hopefully sooner than later." Polsky also asked Bai "Do you intend to file your e2?". (*Id.*)

Bai replied that she had heard from Alter's accountant that Wingsail's management role in Alter may have changed, without her knowledge or consent. (*Id.*) Polsky *again* failed to inform or confirm that Plaintiffs had purportedly defaulted on the SEFED Loan Agreement and that Defendants had taken Wingsail's interest in Alter. Instead, Polsky replied, within one minute of Bai's text, that "we have to do two things for you[.] Have to

pay you back, and get you your E2 if you want it." (*Id.*) This statement and assurance was meant to quell any suspicion of wrongdoing Bai may have had and to provide Plaintiffs sufficient assurances to not investigate the matter further. (*Id.*) Polsky's statements throughout these texts were false since he never planned to return Wingsail's shares or pay back Plaintiffs. To this day, Defendants have done neither. (*Id.*) And Polsky could not "get" Bai her E2 visa as of October 8, 2020, since Defendants had already taken for themselves Wingsail's majority ownership interest in Alter, which is a perquisite for Bai "getting" an E2 visa. (*Id.*) That means Polsky's statements were untrue when he made them—which he *knew*—and were only made to further Defendants' fraud and ensure Plaintiffs' reliance.

As another example, on February 3, 2021, Polsky again assured Plaintiffs that they would receive the distributions they were owed, and that Bai's E2 visa benefits were (still) safe. (*Id.* at ¶ 23) For this statement to be true, Wingsail needed to still own a majority membership interest in Alter as of that date, since an E2 visa requires ongoing majority interest ownership in a U.S. company, as Polsky knew. (*Id.*) Of course, however, Polsky also knew that he had already usurped Wingsail's ownership interest in Alter ten months earlier, via the Conversion Agreement. In other words, Polsky again *knowingly* and *willfully* misrepresented these facts. (*Id.*)

Polsky's knowing and willful misconduct carried into Fall 2021. On August 31, 2021, Polsky reiterated his promise that the Alter membership would be formally assigned and transferred to Wingsail, and assured Plaintiffs (via Chang) that their **ownership interest in Alter was protected**. (*Id.* at ¶ 24) Again, Polsky knew this could not be true since he had usurped Wingsail's ownership interest in Alter sixteen months earlier.

These knowing and willful misrepresentations—all less than three years before Wingsail's September 29, 2023 counterclaim against Defendants—form the bases for Plaintiffs' claims. Tellingly, Defendants fail to address any and all of these incidents in their Motion. (*See generally*, Motion)

## III.    Legal Standard For A Motion To Dismiss

Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." To survive a motion to dismiss, the complaint must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "That is not to say that the claim must be probable, but there must be 'more than a sheer possibility that a defendant has acted unlawfully.'" *Doshi v. eCommission Sols.*, LLC, 2018 WL 4562628, *11 (S.D. Cal. 2018) (citing *Iqbal*, 556 U.S. at 677).

Claims that allege fraud must also meet Rule 9(b)'s "particularity" pleading standard:  "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fraud allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Where the plaintiff does not allege a "unified course of fraudulent conduct in support of a claim, but rather [] allege[s] some fraudulent and some non-fraudulent conduct," then "only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003).

In conducting its analysis, the Court must accept as true the allegations of the complaint in question, "construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor." *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). Indeed, "Rule 12(b)(6) motions are viewed with disfavor and are properly granted only 'under extraordinary circumstances.'" *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). The determination of whether the allegations in a complaint state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint should not be dismissed "unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Mosher v. Kane*, 784 F.2d 1385, 1387 (9th Cir. 1986).

Finally, courts ordinarily grant leave to amend unless the amendment is futile, would cause undue prejudice to the defendants, or is sought by plaintiffs in bad faith or with a dilatory motive. *Forman v. Davis*, 371 U.S. 178, 182 (1962). The Court must exercise its discretion "guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) ("Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality'").

## IV. Argument

### A. Wingsail's September 29, 2023 Counterclaim Against Defendants In The Related Polsky Action Refute Defendants' Statute Of Limitations Arguments

Plaintiffs agree with Defendants' authorities on the various applicable statutes of limitations here (except for the theft cause of action), and thus will not provide additional authorities or arguments on those issues. Plaintiffs note, however, that **Defendants cite to an incorrect date for when those statutes run**—Defendants point to the December 18, 2023 filing of the complaint in this action [Motion, 8:17-23], but **the correct date is September 29, 2023**, when Wingsail filed counterclaims against Defendants in the Related Polsky Action, first laying out the core of its fraud and breach of fiduciary duty claims [Related Polsky Action at ECF No. 42].

Further, the same collection of core operative facts in the SAC were pled in Wingsail's counterclaims in the Related Polsky Action, where both Polsky and SEFED were named defendants. (*Id.*) Given the clear relation back to Wingsail's counterclaims and that both Defendants were named therein, Defendants had notice about Plaintiffs' concerns about their specific conduct and have suffered no prejudice from Plaintiffs' amendments to their claims in the SAC. *See* Advisory Comments to FRCP 15(c) (relation back rules aim to balance the interests of plaintiffs in having their claims heard with the

interests of defendants in having fair notice and the ability to prepare a defense).

### B.   Plaintiffs' Claims Are Not Time Barred

#### 1.   The Breach Of Fiduciary Duty Claim Is Timely

The statute of limitations is three years, so the SAC must allege conduct on or after September 29, 2020, to survive.

The SAC lays out that Polsky's fiduciary duties regarding Plaintiffs' investments (made through MCAP, of which he was President and member) started in 2018 and continued through at least **2021**. (SAC ¶¶ 12-24, 29) Defendants' Motion does not contest, and thus concedes, the existence of such duties—likely because Polsky cannot dispute he was Plaintiffs' fiduciary due to the nature of the parties' relationships.

The SAC alleges that Polsky assured Plaintiffs in **October 2020** and again in **February 2021**, and through Chang at Polsky's direction in **August 2021**—i.e., all within the applicable statutes of limitations and all *after* he had already transferred Plaintiffs' membership interests in Alter to his own company, SEFED—that they would receive their promised distributions and that Bai's visa benefits remained secure. (*Id.* at ¶¶ 21-24, 37-39) In doing so, Polsky was not acting truthfully or within his fiduciary duties, but was instead actively breaching those duties for his own self-dealing. (*Id.*) Polsky's misrepresentations were part of a multi-year scheme to defraud Plaintiffs of their investments and Bai's ability to obtain a visa.[3]

Given that the SAC pleads that Polsky made such fraudulent, misleading statements *in October 2020 and February and August 2021*, after he had already taken away Plaintiffs' capital (and thus made it impossible for Bai to obtain an E2 visa), Plaintiffs'

---

[3] Polsky's misdirection, misrepresentations, and failures to fully inform Plaintiffs about how he was managing their investments in Alter in October 2020 and 2021 were part of an effort to hide Defendants' fraud. As presented in the SAC, Polsky never told Plaintiffs he was converting Plaintiffs' collateral for breach of the SEFED Loan Agreement in April 2020—or at *any* time—nor did he reveal that he was backdating that transaction to make it look as if it happened in December 2019. There was massive sleight of hand going on, over a long period of time, and some of that improper conduct clearly took place with the applicable statute of limitations windows for Plaintiffs' allegations in their SAC.

breach of fiduciary duty claim is not time-barred as pled.

To avoid highlighting Polsky's misrepresentations, however, the Motion improperly narrows Plaintiffs' claims as stemming from the 2019 creation of the self-dealing SEFED Loan Agreement, and simply *ignores* the other pled conduct in paragraphs 21-24 of the SAC. (Motion, 15:3-27) Defendants also claim the August 23, 2024 FAC was the "first alleged the existence of the SEFED Loan Agreements." (Motion, 16:1-7) Defendants again mislead the Court. Not only was the SEFED Loan Agreement alleged in the original Complaint filed in this Action [Complaint, ¶¶ 64-65], it was also pled in Wingsail's counterclaims on September 19, 2023 [Related Polsky Action at ECF No. 42, ¶¶ 75-77]. This further supports the conclusion that the SAC relates back to that September 2023 counterclaim and that this claim falls within the three-year statute of limitations.

The Court should look past Defendants' self-serving and inaccurate summary of the SAC to find the breach of fiduciary duty claim is not time barred. To the extent the Court believes Plaintiffs should provide more details to support this claim, Plaintiffs can readily do so and request leave to amend.

## 2.    The Constructive Fraud Claim Is Timely

The statute of limitations here is also three years, so the SAC must allege conduct on or after September 29, 2020, to survive.

Defendants' arguments to dismiss the constructive fraud claim is similarly flawed. Defendants again improperly narrow their summary of the SAC to focus on conduct that occurred in August 2019 and April 2020—the creation of the SEFED Loan Agreements and execution of the Conversion Agreement, respectively—and again wholly ignore Defendants' conduct from later in 2020 and in 2021. (Motion, 17:16-18:6)

As explained above, Plaintiffs' SAC pleads that Defendants never provided Plaintiffs notice that Defendants were going to collect or had collected the collateral Plaintiffs offered under the SEFED Loan Agreement. (SAC ¶ 20) Moreover, as pled, when Plaintiffs discussed investments in Alter with Polsky in **October 2020 and 2021**, Defendants did not tell Plaintiffs that Defendants had already usurped Plaintiffs'

investment and capital (which meant Bai's path to obtain an E2 visa was no longer viable) and instead *reassured* Plaintiffs they would receive their distributions as planned and that the path to a visa remained safe. (*Id.* at ¶¶ 20-24, 49-51)

Further, Defendants argue, in a footnote, that Wingsail knew in April 2020 that Defendants had converted Plaintiffs' collateral in April 2020 because Chang was a "manager" of Wingsail. (Motion, 17:18-18:6) The argument again ignores Polsky's later misrepresentations. Specifically, Bai texted Polsky in October 2020 that she had heard from Alter's accountant that Wingsail's management role in Alter may have changed, without her knowledge or consent. (*Id.* at ¶¶ 21-22) Polsky could have but did not tell Bai that Plaintiffs had purportedly defaulted on the SEFED Loan Agreement and Defendants had taken Wingsail's interest in Alter. (*Id.*) Instead, Polsky wrote: **"we have to do two things for you[.] <u>Have to pay you back</u>, and <u>get you your E2</u> if you want it."** (*Id.* (emphases added)) Polsky did so to quell Bai's suspicion of any wrongdoing and to lull Plaintiffs into not investigating the matter further. (*Id.*) Thus, even if Defendants' imputed knowledge had any validity, which it does not, Polsky's own later misrepresentation moot the point. What's more, if needed, Plaintiffs can amend the complaint to include an allegation, based on the actual evidence in this case, that Wingsail and MCAP had expressly agreed that MCAP was "at all times . . . independent of [Wingsail]," meaning that while Polsky and Chang were principals of MCAP, they were never its "officers," and Defendants' imputed knowledge argument cannot be used to bar Plaintiffs' constructive fraud claim as untimely.

Indeed, what is pled in the SAC is that Polsky never told Plaintiffs that he and SEFED had converted their collateral in Defendants' favor in April 2020, six months after Plaintiffs injected another $200,000 of capital for investment into Alter based on the SEFED Loan Agreement and Polsky's assurances. (SAC ¶¶ 49-54) By doing so, Defendants stole Plaintiffs' capital and extinguished Bai's path to a visa. (*Id.*) When, in October 2020 and in February and August 2021, Polsky told Plaintiffs that they "would receive the distributions they were promised" and "assured Bai that her E2 visa benefits

were safe"—statements he knew were false when he made them—he breached the duties he owed Plaintiffs and failed to fully inform them about material facts concerning their investments. *Salahutdin v. Valley of California, Inc.*, 24 Cal.App.4th 555, 562 (1994) ("[A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent.").

Plaintiffs' constructive fraud claim is not time barred. Plaintiffs request leave to amend if necessary.

### 3.    The Fraud Claim Is Timely

The statute of limitations is also three years, so the SAC must allege conduct on or after September 29, 2020, to survive.

Defendants' argument here mirrors those in the first two causes of action, and fails for the same reasons. To wit, Defendants ignore the allegations in the SAC that show Defendants fraudulent conduct continued **into October 2020 and 2021**, which brings the claims within the statute of limitations. (SAC ¶¶ 21-24, 29, 58-66)

The claim is timely. If the Court believes this cause of action requires further facts, Plaintiffs request leave to amend to do so.

### 4.    The Promissory Estoppel/Waiver Claim Is Timely

The statute of limitations here is also three years, so the SAC must allege conduct on or after September 29, 2020, to survive.

Defendants' argument here fails because, again, Defendants ignore the portions of the SAC that detail Polsky's conduct **in October 2020 and 2021** that show the claim falls within the applicable timeframe. (SAC ¶¶ 21-24, 29, 72-76)

The SAC explains Polsky promised Plaintiffs several times in late 2020 and 2021 that Plaintiffs' investments were safe— Plaintiffs would receive their promised distributions and Bai would obtain a visa. (*Id.*) Plaintiffs reasonably relied on and trusted Polsky as he had a fiduciary duty to protect their interests. Plaintiffs then continued to rely on Polsky's promises, including the specific promises in October 2020 and 2021, that they

would get the benefits they had been promised and continued to expect—i.e., the return of capital, the gain on their investment, and a visa.

The claim is timely, but Plaintiffs can amend the claim if necessary.

### 5.    The Rescission Claim Is Timely

While different statutes of limitations may apply here, Plaintiffs agree for the purposes of this Motion that the applicable period is four years, so the SAC must allege conduct on or after September 29, 2019, to survive.

Defendants argue Plaintiffs' rescission claim does not relate back to the initial complaint. (Motion, 19:17-20:17) Defendants are incorrect.

The "common core of operative facts" [*Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008)] concerning Polsky's using the SEFED Loan Agreement to take advantage of Plaintiffs was laid out in both Wingsail's September 2023 counterclaims and the December 2023 complaint in this action. (Related Polsky Action at ECF No. 42; ECF No. 1, ¶¶ 62-76) All of Wingsail's pleadings repeat the same "common core of operative facts" concerning Defendants' conduct, including those undertaken in 2021. While the story presented and allegations pled in the SAC provide *additional* details, the essence of all the factual allegations in this complex history concerning Defendants' illicit effort to take Plaintiffs' investments without their knowledge and consent all share the same "common core of operative facts." Defendants were thus on notice of those operative facts back in September 2023, via the Related Polsky Action.

While Defendants' relation back argument is fatally flawed technically, there is also no equitable reason to dismiss Plaintiffs' amended claims. Defendants suffer no prejudice from allowing the amended claims to proceed here since Defendants were on notice of the specific alleged conduct through Wingsail's counterclaim in the Related Polsky Action.

Moreover, as discussed above, Defendants never told Plaintiffs that they had converted Plaintiffs' collateral or how they had done so. (SAC ¶ 24) As such, Defendants' argument that the rescission claim is time-barred because April 6, 2020 (the date of the Conversion Agreement) falls outside the statute of limitations is inapt. Defendants'

1    conduct occurred within the applicable period so relation back analysis is not even needed.

2        To the extent the Court requires Plaintiffs to make these allegations explicit in this

3    cause of action, Plaintiffs request leave to amend to do so.

4            **6.    The Conversion Claim Is Timely**

5        The statute of limitations is three years, so the SAC must allege conduct on or after

6    September 29, 2020, to survive.

7        Defendants' attacks on the timeliness of Plaintiffs' conversion claim are similarly

8    flawed due to Defendants' narrow reading of the SAC. To make the cramped argument

9    that the claim is time barred, Defendants again focus only on April 2020, when Defendants

10   fraudulently converted Plaintiffs' collateral under the SEFED Loan Agreement, as the

11   applicable date. However, as pled in the SAC, Plaintiffs were unaware that Defendants had

12   executed the Conversion Agreement even as of their last direct communication with

13   Polsky, in February 2021. (SAC ¶ 23) Even then, Polsky failed to tell Plaintiffs what he

14   had done and the effect of his actions, and instead misled them to believe everything was

15   progressing according to plan. (*Id.* at ¶¶ 23-25, 87-90)

16       Plaintiffs request leave to clarify this claim to the extent the Court believes

17   amendment is required.

18           **7.    The Theft Claim Is Timely**

19       Defendants' Motion focuses solely on the one-year statute of limitations for treble

20   damages under Penal Code section 496(c), which Plaintiffs agree with and thus dismiss

21   their prayer for treble damages.

22       But Plaintiffs' prayer for compensatory damages, costs of suit, and reasonable

23   attorneys' fees is subject to a <u>three-year</u> statute of limitations, so the SAC must allege

24   conduct on or after September 29, 2020, to survive. *May v. Google LLC*, 2024 WL

25   4681604, *9 (N.D. Cal. 2024); *see also*, *Tu Le v. Prestige Cmty. Credit Union*, 2023 WL

26   9689133, *10 (C.D. Cal. 2023).

27       Here again, Defendants focus solely on April 2020, when Defendants transferred

28   Wingsail's interests in Alter through the Conversion Agreement, and ignore Polsky's

subsequent conduct. (Motion, 21:9-15) Polsky's fraudulent actions prevented Plaintiffs from discovering any theft, at least until August 2021. (SAC ¶¶ 21-25, 96-97)

To the extent the Court believes amendment is necessary to clarify the claim, Plaintiffs request leave to do so.

## C.  Plaintiffs' Claims For Conversion, Unjust Enrichment, And Violation Of The Unfair Competition Law Are Sufficiently Pled

### 1.  The Conversion Claim Asserts Sums Capable For Identification

Plaintiffs have properly alleged conversion, including sums capable for identification.

The SAC states that Defendants converted Plaintiffs' capital investments in Alter, the details of which, including the dates when each was made and for how much, are presented in a table in the SAC. (*Id.* at ¶¶ 18, 87) Other aspects of the conversion claim relate to the annual dividend owed that Plaintiffs never received as provided in the MIA and the annual distributions never received as provided in the Alter Operating Agreement. (*See*, *e.g.*, *id.* at ¶¶ 12, 87-89) An exact amount will be proven through further litigation.

Contrary to Defendants' arguments [Motion, 21:19-22:4], Plaintiffs are not required to provide a specific identifiable sum of money for conversion at the pleading stage. *Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710 F.Supp.2d 1008, 1019-20 (E.D. Cal. 2010). Plaintiffs need only allege an amount of money that is "capable for identification." *Id.* Plaintiffs have done so here.

To the extent amendment is necessary to address a more precise statement of sums for conversion, Plaintiffs request leave to do so.

### 2.  Unjust Enrichment/Constructive Trust Claim Can Stand Alone

Defendants argue, in two sentences, that Plaintiffs' unjust enrichment and constructive trust claim cannot stand alone. (Motion, 22:6-11) The argument fails to provide a full legal analysis, which is that there is a split in authority on the issue and that courts generally resolve the matter by construing the claim to allow it to proceed.

"Some California courts allow a plaintiff to state a cause of action for unjust

enrichment, while others have maintained that California has no such cause of action." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (providing citations for both views); *Monet v. Chase Home Fin., LLC*, 2010 WL 2486376, *2 (N.D. Cal. 2010) ("Decisions in both this federal [Northern] district as well as in California state courts diverge on the proper way to conceptualize unjust enrichment. The differences center on the *availability of the unjust enrichment theory as an independent claim for relief*.") (emph. added). Even though the Ninth Circuit has determined there is no stand-alone claim, "**this Circuit has construed the common law to _allow_ an unjust enrichment cause of action through quasi-contract**." *ESG Cap. Partners*, 828 F.3d at 1038 ("**We therefore allow the cause of action**, as we believe it states a claim for relief as an independent cause of action or as a quasi-contract claim for restitution.") (emphases added).

*Monet* is instructive. After providing a detailed history, analysis, and citations for the split in authority, and after noting that "[i]n several key respects, though, the two approaches do not necessarily compete and can be harmonized [because u]nder both views, the effect of unjust enrichment is remedied with some form of restitution," *Monet* holds that unjust enrichment can stand alone as a cause of action. 2010 WL 2486376 at *2-4. Indeed, one specific example *Monet* cites for when unjust enrichment can be a stand-alone claim is that "a plaintiff may seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property 'identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.'" *Id.* (denying motion to dismiss cause of action for "unjust enrichment meriting the imposition of a constructive trust").

*ESG Cap. Partners*—which is controlling on this Court, whereas the two cases Defendants cite are, at best, persuasive—and *Monet* govern here, and a similar result should ensue. The Court should hold the unjust enrichment/constructive trust claim may stand as a cause of action. To the extent the Court finds otherwise, the Court may, and should, "construe the cause of action as a quasi-contract claim seeking restitution." *ESG Cap. Partners*, 828 F.3d at 1038; *see also*, *Rutherford Holdings, LLC v. Plaza Del Rey*,

1    223 Cal.App.4th 221, 231 (2014).

2        Because Defendants only attacked this claim on the ground that it is not a stand-

3    alone cause of action, not on the merits, they have waived any argument on the merits. *See*,

4    *In re Stable Rd. Acquisition Corp. Sec. Litig.*, 2023 WL 11892194, *3 (C.D. Cal. 2023)

5    ("that [defendants] failed to address the merits of Plaintiff's motion constitutes waiver or

6    concession of the argument"). The Court therefore need not address the merits once it finds

7    the claim survives on its own.

8            **3.    The Unfair Business Practices Claim Is Not A "Shotgun Pleading"**

9        Defendants complain that Plaintiffs' eleventh claim is a "shotgun pleading" such

10    that "Defendants cannot reasonably ascertain the basis of the claim levied against them."

11    (Motion, 22:13-24) Not so.

12        Defendants cite only *Sollberger v. Wachovia Sec.*, LLC, 2010 WL 2674456, *4

13    (C.D. Cal. 2010) to support their argument. But *Sollberger* explains that a "shotgun

14    pleading" is one that "deprives Defendants of knowing exactly what they are accused of

15    doing wrong," and provides two types of such pleadings:  (1) "cases with multiple

16    defendants where the plaintiff uses the omnibus term 'Defendants' throughout a complaint

17    by grouping defendants together without identifying what the particular defendants

18    specifically did wrong"; and (2) "where the plaintiff recites a collection of general

19    allegations toward the beginning of the Complaint, and then 'each count incorporates every

20    antecedent allegation by reference.'" *Id.* Neither situation applies here.

21        First, while there are two Defendants named here, SEFED *is* Polsky for all intents

22    and purposes since Polsky wholly owns and controls SEFED. In reality, there is just one

23    defendant: Polsky. Moreover, given both this and the Related Polsky Action allege the

24    same common core of operative facts, Defendants can hardly argue they do not know "what

25    the particular defendants specifically did wrong." Indeed, they make no such argument.

26        Second, Plaintiffs' claim does not merely incorporate prior allegations and leave it

27    at that, as a "shotgun pleading" would, but identifies each element of the claim in a separate

28    paragraph. (SAC ¶¶ 118-125) To the extent, however, that the Court requires Plaintiffs to

further identify these elements, Plaintiffs can readily amended complaint to do so, making dismissal without prejudice the proper outcome here, if needed.

### D.    Defendants' Fraudulent Concealment And The Discovery Rule Toll The Statute Of Limitations

As noted repeatedly above, Defendants mainly argue Plaintiffs' claims are time-barred by narrowly focusing on certain contracts executed in August 2019 and April 2020, which fall outside the statutes of limitations. The fraudulent concealment doctrine and discovery rule refute the argument and toll the statutes of limitations because Plaintiffs were unable to discover, either actually or through reasonable diligence, the facts essential to their claims due to Defendants' ongoing fraudulent concealment.

### 1.    The Fraudulent Concealment Doctrine Tolls The Statutes Of Limitation

The fraudulent concealment doctrine tolls statutes of limitation when "'the defendant, having by fraud or deceit concealed material facts and by misrepresentations hindered the plaintiff from bringing an action within the statutory period,'" and thus estops the defendant "'from taking advantage of his own wrong.'" *Baker v. Beech Aircraft Corp.,* 39 Cal.App.3d 315, 322-23 (1974) ("*actual fraud* will estop the defense of the statute of limitations where there have been active misrepresentations or purported disclosures which actually suppress material facts").

Whether the plaintiff "should have made discovery sooner in view of the facts set forth, is not a question to be concluded as a matter of law." *Id.* at 323. And whether the plaintiff "has notice of 'circumstances sufficient to put a prudent man upon inquiry as to a particular fact,' and whether 'by prosecuting such inquiry, he might have learned such fact' (Civ. Code, § 19) when facts are susceptible to opposing inferences are themselves questions of fact to be determined by the jury or the trial court." *Id.*

Here, after Polsky repeatedly assured Plaintiffs that the deadline on the SEFED Loan Agreement was flexible and that they could transfer the funds after August 31, 2019, Plaintiffs wired an additional $200,000 pursuant to the SEFED Loan Agreement to

Defendants in or around October 2019. (SAC ¶¶ 16-18) Defendants never provided Plaintiffs notice of any purported default on the SEFED Loan Agreement, and never informed Plaintiffs that they would take Wingsail's interest in Alter (thereby also taking Bai's right to an E2 visa). (*Id.* at ¶ 20) To the contrary, following this transfer, Polsky continued to reassure Plaintiffs that their investments in Alter were secure, that progress was being made as planned, and that Bai remained on track to receive her E2 visa. (*Id.* at ¶¶ 19-24)

For example, on October 8, 2020, when Bai texted that she had heard that Wingsail's management role in Alter may have changed, rather than tell her the truth (that it had), Polsky led Bai to believe that Wingsail still had membership in Alter by writing instead: **"we have to do two things for you[.] Have to pay you back, and get you your E2 if you want it"**–both of which statements Polsky knew where *actually fraudulent* when he made them. (*Id.* at ¶¶ 21-22 (emphases added)) In other words, Plaintiffs did what a reasonable person would do when he/she hears such a development—they inquired directly of Polsky about the statement's veracity. Rather than tell the truth, which would have put Plaintiffs on notice that their cause of action had begun to run, Polsky actively concealed his wrongdoing, and did so to quell any suspicion of wrongdoing Bai may have had and sufficiently assure Plaintiffs so they would not investigate the matter further. (*Id.*)

As another example, on February 3, 2021, still without any notice of default on the SEFED Loan Agreement, Polsky again fraudulently assured Bai via text that she would receive the promised distributions and that her E2 visa benefits remained secure. (*Id.* at ¶ 23) Then, on August 31, 2021, Polsky emailed Chang promising that the Alter membership would be formally assigned and transferred to Wingsail as promised, and told Chang to assure Plaintiffs that their ownership interest in Alter was protected, which Chang did at Polsky's direction. (*Id.* at ¶ 24) Polsky continued to provide similar assurances to Plaintiffs and Chang until December 2022. (SAC ¶¶ 13, 25, 29) Plaintiffs relied on each and all of these (false) promises.

Polsky's misrepresentations and fraudulent concealment rendered Plaintiffs' due

1   diligence ineffective, leaving them unaware and ignorant of any wrongdoing or injury until

2   at least August 2021, and up until December 2022. It is for the trier of fact, not the Court,

3   to decide whether Plaintiffs "should have made discovery sooner." *Baker,* 39 Cal.App.3d

4   at 323. The fraudulent concealment doctrine must be applied to estop Polsky "'from taking

5   advantage of his own wrong.'" *Id.*

6          **2.    The Discovery Rule Also Tolls The Statutes Of Limitation**

7          The discovery rule also "postpones accrual of a cause of action until the plaintiff

8   discovers, or has reason to discover, the cause of action." *See*, *Nogart v. Upjohn Co.,* 21

9   Cal.4th 383, 388 (1999). Statutes of limitations thus do not begin to run "until the plaintiff

10  has reason to suspect an injury and some wrongful cause." *Fox v. Ethicon Endo-Surgery,*

11  *Inc*., 35 Cal.4th 797, 789 (2005). Plaintiffs are not required to conduct a reasonable

12  investigation until "after becoming aware of an injury and are charged with knowledge of

13  the information that would have been revealed by such an investigation." *Id.* at 807.

14         The same facts that support applying the fraudulent concealment doctrine support

15  applying the discovery rule as well, and Plaintiffs respectfully incorporate them here.

16  **V.    Conclusion**

17         For the foregoing reasons, the Court should deny the Motion to Dismiss. If the Court

18  does grant any of the Motion, the Court should grant Plaintiffs leave to amend.

19

20  Date: February 7, 2025                    SHEIK LAW, INC.

21                                            By:  _____/s/ Mani Sheik_____

22                                            Mani Sheik, Esq.

23                                            Attorneys for Plaintiffs Wingsail Holdings,

24                                            LLC and Yunfei "Kristy" Bai

25

26

27

28

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs Wingsail Holdings, LLC and Yunfei "Kristy" Bai, certifies that, in reliance on the word count function of the word-processing application used to prepare the brief, that this brief contains <u>6,823 words</u>, which complies with the word limit of L.R. 11-6.1.

Date: February 7, 2025                    Sheik Law, Inc.

                                          /s/ Mani Sheik
                                          Mani Sheik
                                          Attorneys for Plaintiffs Wingsail Holdings,
                                          LLC and Yunfei "Kristy" Bai