1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| WINGSAIL HOLDINGS, LLC, a Washington limited liability company, and YUNFEI "KRISTY" BAI, an individual, | Case No. 8:23-cv-02398-JWH-DFM |
| Plaintiff, | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS CAUSES OF ACTION NOS. 1-7, 9, & 11 [ECF No. 68]** |
| v. | |
| ANDREW POLSKY, an individual; ALTER MANAGEMENT, LLC, a California limited liability company; ALTER HEALTH GROUP, INC., a California corporation; ALTER LIFE SCIENCES, INC., a California corporation; ALTER LIFE SCIENCES, LLC, a California limited liability company; CAMBRIDGE MENTAL HEALTH MANAGEMENT LLC, a California limited liability company; SEFED, a California corporation; and DOES 1 through 10, | |
| Defendants. | |

1    Before the Court is the motion of Defendants Andrew Polsky and SEFED
2  (jointly, "Defendants") to dismiss the First Amended Complaint of Plaintiffs
3  Wingsail Holdings and Yunfei "Kristy" Bai.[1]  The Court concludes that this
4  matter is appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78;
5  L.R. 7-15.  After considering the papers filed in support and in opposition, the
6  Court orders that Defendants' Motion is **DENIED**, for the reasons set forth
7  herein.

# I.  BACKGROUND

## A.    Procedural History

10    The parties are familiar with the procedural history of this action.  As
11 relevant here, in December 2023 Wingsail commenced this action against
12 Defendants Polsky and SEFED, as well as Defendants Alter Management, LLC;
13 Alter Health Group, Inc.; Alter Life Sciences, Inc.; Alter Life Sciences, LLC;
14 and Cambridge Mental Health Management LLC (collectively, "Alter").[2]  In
15 August 2024, the Court directed Wingsail to file an amended pleading,[3] and
16 Plaintiffs timely complied.[4]

17    Defendants moved to dismiss that pleading in September 2024, and
18 Plaintiffs requested leave to amend.[5]  In view of that request, the Court denied
19 Defendants' First Motion to Dismiss without prejudice and directed the parties

---

[1]    Defs.' Mot. to Dismiss Causes of Action Nos. 1-7, 9, & 11 (the "Motion")
[ECF No. 68].

[2]    Compl. (the "Complaint") [ECF No. 1].

[3]    Minute Order re Hr'g re the Motion for Reconsideration [ECF No. 44]
¶ 3.

[4]    First Am. Compl. [ECF No. 46].

[5]    *See* Defs.' Mot. to Dismiss Causes of Action Nos. 1-8 and 11 (the "First
Motion to Dismiss") [ECF No. 48].

to engage in a rigorous L.R. 7-3 Conference of Counsel regarding the alleged infirmities in the First Amended Complaint.[6]

Plaintiffs filed the operative Amended Complaint in January 2025.[7] In their Amended Complaint, Plaintiffs assert the following 11 claims for relief:

- breach of fiduciary duty;
- constructive fraud;
- fraud;
- promissory estoppel/waiver;
- recission and declaratory relief;
- conversion;
- theft;
- restoration of property pursuant to Cal. Civ. Code § 1712;
- unjust enrichment/constructive trust;
- accounting; and
- unfair, unlawful, or fraudulent business practices.

Defendants filed the instant Motion in January 2025,[8] and it is fully briefed.[9]

**B.    Factual Allegations[10]**

Defendant Polsky, along with non-party Fu-Shen "Max" Chang, "offer[] foreign visa investment services to foreign nationals seeking to obtain a visa through one of the various foreign investment-based programs of the U.S.

---

[6]    *See* Order Re Defs.' Mot. to Dismiss the First Amended Complaint [ECF No. 58].

[7]    *See* Second Am. Compl. (the "Amended Complaint") [ECF No. 64].

[8]    *See* Motion.

[9]    *See* Pls.' Opp'n to the Motion (the "Opposition") [ECF No. 70]; Defs.' Reply in Supp. of the Motion (the "Reply") [ECF No. 71].

[10]    The following factual summary is taken from the Amended Complaint, and the Court assumes it to be true for the purpose of the instant Motion.

Government."[11]  In 2018, Bai was introduced to and developed relationship with
Chang and Polsky, the latter of whom was "seeking capital to enter the business
of behavioral and mental healthcare and drug rehabilitation."[12]  To that end,
Polsky "promised Bai that she would receive (through Wingsail) a significant
majority ownership share in Alter," which was a behavioral and mental
healthcare and drug rehabilitation company, "and thereby be eligible to obtain a
U.S. visa."[13]

     In July 2018, in reliance upon Polsky's representations, Bai entered into
an agreement with Polsky and Chang.[14]  That agreement "provided that
Wingsail would be the sole seed capital contributor to Alter and would receive a
65% membership interest in Alter, including all the rights and entitlements that
accompany such a majority interest, as required by the E2 visa program."[15]
Unbeknownst to Bai, however, Polsky did not intend for Plaintiffs to receive a
65% membership ownership interest in Alter.[16]  Instead, throughout 2018 and
2019, Polsky required Plaintiffs to invest additional money into Alter, under the
mistaken belief that those cash infusions were necessary to keep Alter afloat.[17]

     In particular, in August 2019 Polsky informed Bai that Alter would go out
of business if Plaintiffs did not "tender an additional $200,000-$300,000 by the
end of August 2019."[18]  When Bai "informed Polsky she would not be able to

---

[11]    Amended Complaint ¶ 9.

[12]    *Id.* at ¶ 10.

[13]    *Id.* at ¶ 11.

[14]    *Id.*

[15]    *Id.* at ¶ 12.

[16]    *See generally id.*

[17]    *Id.* at ¶¶ 13–18.

[18]    *Id.* at ¶ 14.

secure such large amounts so quickly," Polsky "proposed that he would loan $100,000 to Wingsail" through SEFED, which is an entity that Polsky controls, "so that [Wingsail] could loan the money to Alter immediately."[19]  In exchange for the loan from SEFED, Plaintiffs agreed to loan Alter $100,000 immediately and to loan Alter an additional $200,000 later that month.[20]  Additionally, Plaintiffs' ownership interest in Alter served as collateral for the loan from SEFED to Wingsail.[21]

Before entering into the SEFED loan agreement, Plaintiffs expressed to Polsky that they were concerned about the terms of that deal because Plaintiffs were not sure that they could transfer $200,000 to Alter by the deadline set forth in the agreement.[22]  In response to those concerns, however, Polsky assured Bai and Chang that "Plaintiffs could have extra time to make the additional $200,000 transfer" and that Polsky "would not take action" with respect to Plaintiffs' ownership interest in Alter.[23]  Based upon Polsky's representations that Plaintiffs would not lose their ownership interest in Alter if they failed to transfer $200,000 to Alter by the end of the month, Plaintiffs entered into the SEFED loan agreement in August 2019.[24]

Plaintiffs completed the $200,000 transfer approximately two months later, in October 2019.[25]  Following that transfer, Defendants "continued to

---

[19]    *Id.* at ¶¶ 14 & 15.

[20]    *Id.* at ¶ 15.

[21]    *Id.*

[22]    *Id.* at ¶ 16.

[23]    *Id.*

[24]    *See id.*

[25]    *Id.* at ¶ 17.

operate business as usual."[26]  Throughout 2020 and 2021, Plaintiffs repeatedly inquired about Alter's performance, and, in response to those inquiries, Polsky confirmed that Plaintiffs' ownership interest remained unchanged and that Bai's visa benefits were safe.[27]  But Polsky's representations were false:  by April 2020, Polsky had already "transferred to himself and SEFED the Alter equity."[28]  As a result, Plaintiffs lost all of the money that they had invested in Alter—a total of $931,820—as well as their ownership interest.[29]  Additionally, because Bai no longer owned 65% of Alter, she was unable to apply for a visa.[30]

## II.  LEGAL STANDARD

### A.    Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in a complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002).  Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Factual allegations must be

---

[26]    *Id.* at ¶ 19.

[27]    *Id.* at ¶¶ 20–23.

[28]    *Id.* at ¶ 25.

[29]    *Id.* at ¶ 28.

[30]    *Id.*

enough to raise a right to relief above the speculative level on the assumption
that all the allegations in the complaint are true (even if doubtful in fact) . . . ."
*Twombly*, 550 U.S. at 555 (citations and footnote omitted). Accordingly, to
survive a motion to dismiss, a complaint "must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible on its face," which
means that a plaintiff must plead sufficient factual content to "allow[] the Court
to draw the reasonable inference that the defendant is liable for the misconduct
alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks
omitted). A complaint must contain "well-pleaded facts" from which the Court
can "infer more than the mere possibility of misconduct." *Id.* at 679.

**B.    Rule 15(a)—Leave to Amend**

A district court "should freely give leave when justice so requires."
Fed. R. Civ. P. 15(a). The purpose underlying the liberal amendment policy is to
"facilitate decision on the merits, rather than on the pleadings or
technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Therefore,
leave to amend should be granted unless the Court determines "that the
pleading could not possibly be cured by the allegation of other facts." *Id.*
(quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

## III.  ANALYSIS

**A.    Statute of Limitations**

Defendants argue that "Plaintiffs' claims for breach of fiduciary duty,
constructive fraud, fraud, promissory estoppel, recission, conversion, and theft
are all time-barred" because those claims accrued in August 2019, when Polsky
created the SEFED loan agreement that he ultimately used to transfer Plaintiffs'
ownership interest to Defendants.[31] Defendants further aver that the discovery
rule does not apply to Plaintiffs' claims because Plaintiffs have not "allege[d]

---

[31]    *See* Motion 5:16–18.

1   *any* facts explaining the 'time and manner' of discovery as required to rely on

2   the discovery rule" and because Plaintiffs did not plead "'actual ignorance' of

3   the conduct giving rise to their claims."[32]

4           The discovery rule "protect[s] those who are ignorant of their cause of

5   action through no fault of their own" by delaying the accrual of a plaintiff's

6   claim until the plaintiff "knew or should have known of the wrongful conduct at

7   issue." *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003)

8   (alterations adopted).  The discovery rule does not protect a plaintiff who "had

9   enough information to warrant an investigation which, if reasonably diligent,

10  would have led to the discovery of the fraud."  *Oracle Am., Inc. v. Hewlett*

11  *Packard Enterprise Co.*, 971 F.3d 1042, 1048 (9th Cir. 2020).  But in general, the

12  discovery rule does apply when a plaintiff alleges that she relied upon false

13  representations that were made in order to conceal the harm to the plaintiff,

14  even if the plaintiff "might have ascertained the falsity of the representation had

15  he undertaken an investigation."  *See El Pollo Loco*, 316 F.3d at 1039.

16          The Court is not persuaded by either of Polsky's arguments against

17  applying the discovery rule in this case.  First, Polsky contends that, under *Fox v.*

18  *Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005), Plaintiffs may not reap the

19  benefits of the discovery rule unless Plaintiffs specifically allege the "***manner*** of

20  the referenced discovery of Defendants' alleged misconduct."[33]  But *Fox* does

21  not support that proposition.  *See id.* at 811.  Rather, *Fox* holds that a plaintiff

22  may "employ the discovery rule to delay accrual of a cause of action" if the

23  plaintiff alleges "specific facts" to support that the plaintiff "conducted a

24  reasonable investigation of all potential causes of his or her injury."  *Id.*

25  Plaintiffs have made such allegations here, because Plaintiffs allege that Bai and

26

27  [32]    *Id.* at 6:15–18 (emphasis in original).

28  [33]    *Id.* at 6:26–28 (emphasis in original).

-8-

Chang repeatedly attempted to investigate the status of Bai's ownership interest in Alter, only to be misled and rebuffed by Polsky.[34]

Next, Polsky's argument that Plaintiffs failed to plead facts showing that Plaintiffs were "actually ignorant of Defendants' alleged misconduct" is inconsistent with the Amended Complaint. Specifically, Plaintiffs allege that, as of February 2021, Plaintiffs were unaware that Defendants had "already taken steps to take for themselves" Plaintiffs' ownership interest in Alter.[35] Plaintiffs also allege that they did not learn "the true nature and full scope of Defendants' misconduct until December 2022 at the earliest."[36] Those facts suffice to show that Plaintiffs did not have actual knowledge of Defendants' alleged misconduct.

Accordingly, the Court concludes that, at this stage of the litigation, Plaintiffs have alleged sufficient facts to establish that the discovery rule applies to Plaintiffs' claims. Because Defendants do not appear to dispute that Plaintiffs' claims fall within the statute of limitations if the discovery rule applies, the Court rejects Defendants' statute-of-limitations arguments.

**B.    Unjust Enrichment**

Defendants argue that Plaintiffs' unjust enrichment claim must be dismissed with prejudice because it is not a viable standalone claim. That argument runs counter to Ninth Circuit precedent. Although unjust enrichment is not a standalone cause of action under California law, the Ninth Circuit has held that unjust enrichment claims are nevertheless valid because they "describe the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Therefore, a court may

---

[34]    *See* Amended Complaint ¶¶ 20–25.

[35]    *Id.* at ¶¶ 23 & 28.

[36]    *Id.* at ¶ 29.

construe an unjust enrichment claim as a "quasi-contract claim seeking restitution," which is valid cause of action under California law. *Id.* The Ninth Circuit has also cautioned that, while unjust enrichment claims are often "duplicative of or superfluous to" other claims, that is "not grounds for dismissal." *Id.* Accordingly, the Court **DENIES** Defendants' Motion to dismiss the unjust enrichment claim.

## C. Conversion

Defendants argue that Plaintiffs' conversion claim must be dismissed because Plaintiffs have not "identif[ied] any specific, identifiable sums of money that Defendants purportedly converted."[37] The Court disagrees. "While it is true that money cannot be the subject of a conversion unless a specific sum capable of identification is involved, . . . it is not necessary that each coin or bill be marked." *Haigler v. Donnelly*, 18 Cal. 2d 674, 681 (1941). It is thus sufficient for Plaintiffs to allege that Defendants converted "an amount of money that is capable of identification." *See PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 397 (2007). Plaintiffs have specifically identified their $931,820.00 investment in Alter as the basis for their conversion claim.[38] Accordingly, the Court **DENIES** Defendants' Motion with respect to Plaintiffs' conversion claim.

## D. Unfair Competition Law ("UCL")

Defendants move to dismiss Plaintiffs' UCL claim, arguing that, rather than allege facts unique to the UCL claim, Plaintiffs "reallege and incorporate by reference" their prior allegations.[39] A UCL claim, however, depends upon predicate violations, such as those violations that form the basis of Plaintiffs'

---

[37] Motion 14:27–15:1.

[38] Complaint ¶¶ 18, 87, & 89.

[39] Motion 15:14.

other claims. *See Davis v. HSBC Bank Nevada, N.A.*, 69 F.3d 1152, 1168 (9th Cir. 2012) (discussing role of predicate offenses with respect to claims for unlawful business practices). Therefore, the Court disagrees that Plaintiffs' UCL claim is inadequately pleaded and **DENIES** Defendants' Motion with respect to the UCL claim.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.    Defendants' Motion to dismiss [ECF No. 68] is **DENIED**.

2.    Defendants are **DIRECTED** to file no later than August 1, 2025, their respective Answers to Plaintiffs' Amended Complaint.

**IT IS SO ORDERED.**

Dated:_____July 15, 2025_____

_____
John W. Holcomb
UNITED STATES DISTRICT JUDGE