# EXHIBIT B

## <u>LOAN AND PLEDGE AGREEMENT</u>

**THIS LOAN AND  PLEDGE AGREEMENT** (this "Agreement") is made and entered into this 16th day of August 2019, by and between WINGSAIL HOLDINGS, LLC ("Pledgor") and SEFED, a California corporation ("Pledgee").

### RECITAL

*WHEREAS*, Pledgor holds all right, title, and interest in and to a membership interest in Alter Management, LLC, a California limited liability company (the "Company"), free and clear of liens and encumbrances of all kinds (the "Membership Interest");

*WHEREAS*,  Pledgor desires that Pledgee loan to Pledgor the sum of One Hundred Thousand Dollars ($100,000) ( "Loan to Pledgor") pursuant to a promissory note of even date (the "Promissory Note") to enable Pledgor in turn to immediately make a loan to the Company in the amount of One Hundred Thousand Dollars ($100,000) (the "First Loan to Company"); and

*WHEREAS*, Pledgee desires that Pledgor make an additional loan to the Company on or before August 31, 2019, in the amount of Two Hundred Thousand Dollars ($200,000) (the "Second Loan to Company").

### AGREEMENT

**NOW THEREFORE,** for and in consideration of the foregoing recitals, the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Pledgor and Pledgee agree as follows:

1.	<u>Security Interest and Agreement to Loan.</u> To induce Pledgee to make the Loan to Pledgor, Pledgor hereby pledges and grants to Pledgee a security interest in and a lien on the Membership Interest,including all voting rights, all rights to profits and losses, and all distribution rights associated with the Membership Interest (collectively, the "Collateral"). As further inducement to Pledgee, Pledgor agrees to immediately make the First Loan to Company and to make the Second Loan to Company no later than August 31, 2019.

2.	<u>Obligations Secured.</u> The Collateral and the continuing security interest granted herein shall secure all amounts payable under the Promissory Note and all obligations of Pledgor to immediately make the First Loan to Company and to make the Second Loan to Company on or before August 31, 2019.

3.	<u>Delivery.</u>  Any and all original certificates and instruments representing or evidencing the Collateral, or any portion thereof, shall be delivered to and held by or on behalf of Pledgee pursuant hereto and shall be in suitable form for transfer by delivery, or shall be accomplished by duly executed instruments of transfer or assignments in blank.

AP004269

4.      Covenants. Pledgor covenants and agrees that until the amounts due and owing under the Promissory Note have been paid in full and Pledgor has timely made both the First Loan to the Company and the Second Loan to the Company, Pledgor shall:

(a)   Sale of Collateral. Not sell, transfer, assign or otherwise dispose of the Collateral, or any portion thereof, without the prior written consent of Pledgee.

(b   Creation of Liens. Not voluntarily create, incur or permit to exist any mortgage, pledge, encumbrance, lien, security interest or charge of any kind on the Collateral, or any portion thereof, except as contemplated hereby.

(c)   Additional Documents and Future Actions. Pledgor will take such actions and provide Pledgee, from time to time, with such agreements, financing statements and additional instruments, documents or information as Pledgee may reasonably deem necessary or advisable to perfect, protect and maintain its security interests in the Collateral or any portion thereof, to permit Pledgee to protect its interest in the Collateral or any portion thereof, or to carry out the terms hereof. Pledgor irrevocably authorizes the filing of carbon, photographic or other copy of this Agreement, or of a financing statement, as a financing statement.

(d)   Requested Information. Upon a Default as defined below, with reasonable promptness, deliver to Pledgee all such other data and information in respect of the financial condition and affairs of Pledgor and the value of the Collateral, as Pledgee may reasonably request from time to time.

5.      Default. The occurrence of any default of Pledgor's obligations under the Promissory Note or any failure by Pledgor to make either the First Loan to Company or the Second Loan to Company in a timely fashion shall constitute an Event of Default hereunder.

6.      Rights of Pledgor and Pledgee.

(a)      Before a Default. Prior to the occurrence of an Event of Default:

(1)   Voting.  Pledgor shall be entitled to exercise any and all voting and other consensual rights arising under the Collateral, or any portion thereof, for any purpose not inconsistent with the terms hereto.

(2)   Distributions.  Pledgor shall be entitled to receive and retain, free and clear of any security interest in favor of Pledgee, any and all distributions with respect to the Collateral, or any portion thereof.

(b)      After a Default. Upon the occurrence and during the continuance of an Event of Default:

(1)      Voting. Pledgee shall have the right to (i) exercise voting and other consensual rights which Pledgor would otherwise be entitled to exercise and (ii) receive all distributions which Pledgor would otherwise be authorized to receive and retain.

2

(2)    <u>Sale of Collateral.</u> Pledgee may exercise in respect of the Collateral all the rights and remedies of a secured party upon default under the Uniform Commercial Code of the State of California.

7.   <u>Reasonable Care.</u> Pledgee shall exercise reasonable care in the custody and preservation of the Collateral in its possession.

8.   <u>Return of Collateral.</u>  Upon the satisfaction by the Pledgor of all its obligations under the Promissory Note and this Agreement, the security interest given in the Collateral shall be terminated. Within ten (10) days thereof, the Pledgee shall deliver the Collateral to Pledgor.

9.   <u>Severability.</u>  The provisions of this Agreement are deemed to be severable, and the invalidity or unenforceability of any provision shall not affect or impair the remaining provisions which shall continue in full force and effect.

10.  <u>Binding Effect.</u> This Agreement and all rights and duties hereunder will bind and inure to the benefit of the parties hereto and their respective heirs, executors, personal representatives and permitted successors and assigns, as applicable.

11.  <u>Amendment.</u>  No modification of this Agreement shall be binding or enforceable unless in writing and signed by or on behalf of the party against whom enforcement is sought.

12.  <u>Time Is of the Essence.</u>  Time is of the essence with respect to all payments and obligations under this Agreement.

13.  <u>Governing Law.</u>  This Agreement has been made, executed and delivered in the State of California and shall be construed in accordance with and governed by the laws of such State. In any action or proceeding brought to enforce or interpret the provisions of this Agreement, venue shall be proper in the state and federal courts located in Orange County, California, and the prevailing party shall be entitled to reasonable costs and attorney's fees in additional to any other relief granted.

14.  <u>Counterparts.</u> This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any of the parties hereto may execute this Agreement by signing any such counterpart.

IN WITNFSS WHEREOF, Pledgor and Pledgee have executed this Agreement as of the day and year first above written.

[SIGNATURE PAGE FOLLOWS]

3

AP004271

**WINGSAIL HOLDINGS, LLC**

By_____

Fu-Shen Chang, Authorized Signatory

**SEFED**

By_____

Andrew Polsky, CEO

ACKNOWLEDGED AND AGREED TO BY

_____

4

AP004272