Alejandro S. Angulo (State Bar No. 217823)
aangulo@rutan.com
Kailynne N. McKee (State Bar No. 366564)
kmckee@rutan.com
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, California 92612
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Defendants
ANDREW POLSKY, and SEFED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINGSAIL HOLDINGS, LLC, a Washington Corporation, and YUNFEI "KRISTY" BAI, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>ANDREW POLSKY, an individual, and SEFED, a California Corporation, and DOES 1 through 10,<br><br>Defendants. | Case No. 8:23-CV-02398-JWH-DFM<br><br>Honorable John W. Holcomb<br><br>**DEFENDANTS ANDREW POLSKY, AND SEFED'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Date Action Filed: August 23, 2024<br><br>Trial Date: June 29, 2026<br>Time: 9:00 a.m.<br>Courtroom: 9D |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-1-

Case No. 8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

Defendants Andrew Polsky ("Mr. Polsky"), and SEFED (collectively, "Defendants") respectfully submit this Memorandum of Contentions of Fact and Law pursuant to Local Rule 16-4 of the Central District of California.

## I. INTRODUCTION

Defendants Mr. Polsky and SEFED submit this Memorandum of Contentions of Fact and Law pursuant to the Court's pretrial procedures. Plaintiffs assert eleven state-law claims arising out of a 2018–2019 investment relationship between the parties tied to Alter Management, LLC ("Alter"), and a short-term August 2019 loan transaction between Wingsail Holdings, LLC ("Wingsail") and SEFED secured by Wingsail's membership interest in Alter. Defendants contend the claims fail on the merits and are independently barred by statute of limitations. The pleadings demonstrate: (a) executed operative agreements governing the relationship; (b) an undisputed Wingsail default under an integrated Promissory Note and Loan and Pledge Agreement; and (c) Wingsail's transfer of its Alter membership interest to SEFED in April 2020 via an "Agreement to Accept Collateral in Full Satisfaction of Obligations," effective December 31, 2019.

## II. BRIEF OVERVIEW OF THE CASE

### A. Relevant Factual Background

In October 2013, Mr. Polsky and Fu Shen "Max" Chang ("Mr. Chang") created MCAP Holdings, LLC ("MCAP"). MCAP is an immigration-linked investment firm that assists affluent foreign investors invest in qualified U.S. projects to obtain U.S. immigrant visas through investor visa pilot programs, like and including, EB-5 and E-2 programs. In doing so, MCAP, among other things, evaluates, structures, negotiates, holds, and manages its clients immigrant investment projects.

Mr. Chang – who has contacts in China and speaks Mandarin – is MCAP's manager. Mr. Chang holds a 65% membership interest in MCAP, and Mr. Polsky holds a 35% membership interest in MCAP. As MCAP's manager, Mr. Chang's

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-1-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

responsibility and duty is to solicit, vet, and engage investors for business opportunities. Mr. Chang is also in charge of raising capital and doing things like and including, drafting and preparing private placement memorandums that contain specific EB-5 or E-2 related language, escrow agreements, loan documents, regional center agreements, economic job impact analysis reports, and business plans.

In or about 2018, Mr. Chang was introduced to Plaintiff Yunfei "Kristy" Bai ("Ms. Bai") by a mutual friend. The two have since become friends. Mr. Chang solicited Ms. Bai, who comes from a wealthy family in China (though she lives in Canada), to make an investment in an immigrant investment project through which she could obtain a U.S. visa. To facilitate her investment, Ms. Bai formed Plaintiff Wingsail Holdings, LLC ("Wingsail") and appointed Mr. Chang as its manager, a position he currently holds.

On July 31, 2018, Wingsail entered into an agreement with MCAP entitled "Management and Investment Agreement" (the "Management Agreement") through which Wingsail hired MCAP to manage Wingsail's investment. (Trial Ex. 001.)[1] Ms. Bai signed the Management Agreement on Wingsail's behalf and Mr. Chang signed it on MCAP's behalf. MCAP and Wingsail also entered into an agreement entitled "Membership Interest Option Agreement" (the "Option Agreement"), which identified Alter Management, LLC ("Alter") as the company for Wingsail's investment. (Trial Ex. 002.)[2] The Option Agreement afforded MCAP an irrevocable option to purchase Wingsail's interest in Alter for the greater of $1,000 or the remaining unpaid principal maintained in Wingsail's capital account. (Trial Ex. 002.) Mr. Chang signed the Option Agreement on MCAP's behalf and Ms. Bai signed it on Wingsail's behalf.

In July 2018, Wingsail signed an operating agreement for Alter through

---

[1]   Ms. Bai testified at deposition that she reviewed every agreement that Wingsail signed prior to its execution and further, where executed, provided her approval to Mr. Chang to sign all such agreements in his capacity as Wingsail's manager.
[2]   Alter is a residential behavioral health company that provides in-patient residential treatment services.

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26                                    -2-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

which Wingsail was afforded a 65% membership interest. (Ex. 003.) Alter's other members are identified (a) as Syzygy Management Group, LLC ("Syzygy"), which was provided a 27.5% membership interest, and (b) Pan Pacific Strategies, LLC ("Pan Pacific"), who was provided a 7.5% membership interest. Thereafter, Wingsail made several investments in Alter totaling approximately $731,840.

In April 2019, Wingsail borrowed $150,000 from Jordan Mallin to be used to fund Alter's operations. This loan was the subject of an agreement entitled "Loan and Security Agreement," which includes the Promissory Note as Exhibit A (the "Mallin Loan Agreement"). (Trial Ex. 040.) This loan was subject to a 30% interest rate per annum and further, was secured by Wingsail's property. The Mallin Loan Agreement was signed by Mr. Chang as Wingsail's manager and Mr. Malling as the lender.

On August 16, 2019, Wingsail borrowed $100,000 from SEFED, a company owned by Mr. Polsky, which was also to be used to fund Alter's operations. This loan was the subject of an agreement entitled "Loan and Pledge Agreement" (the "Pledge Agreement") and a Promissory Note (the "Promissory Note") that is referenced in the Pledge Agreement. (Trial Exs. 006 & 007.) This loan was secured by Alter's interest in Wingsail. The interest rate was 10% per annum. The Pledge Agreement was signed by Mr. Chang as Wingsail's manager, Mr. Polsky as SEFED's CEO, and acknowledged by Ms. Bai. The Promissory Note was signed by Mr. Chang as Wingsail's manager and Mr. Polsky as SEFED's CEO. The Promissory Note was due paid in full within 15 days (i.e., August 31, 2019).[3]

Wingsail did not timely pay SEFED's loan. Instead of foreclosing on Wingsail's interest in Alter however, SEFED – and by extension Mr. Polsky – afforded Wingsail more time to repay the loan. In October, Mr. Polsky, Mr. Chang, and Ms. Bai discussed the importance of first pay Mr. Mallin's loan since that loan

---

[3]   Mr. Polsky was reluctant to have SEFED loan Wingsail money. The loan was provided, however, after Mr. Chang and Ms. Bai advised that Wingsail was unable to borrow money from other sources.

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26          -3-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

was subject to a 30% interest rate. These discussions are also the subject of text messages between the parties. (*See*, Trial Exs. 46 – 50.) On October 23, 2019, Ms. Bai transferred $200,000 to a Wingsail bank account created by Mr. Chang in his capacity as Wingsail's manager. Of this amount, $166,910.96 was paid to Mr. Mallin to pay off his loan, inclusive of accrued interest. (Trial Ex. 51.) The remaining balance was paid to SEFED thereby reducing, but not paying off completely, SEFED's loan.

Ultimately, Wingsail chose not to pay the remaining balance owed on the SEFED loan. In lieu of paying the remaining balance, Wingsail, with Ms. Bai's approval, proposed transferring its interest in Alter as full payment of the remaining balance on SEFED's loan. At the time of Wingsail's, there were serious questions about Alter's future given financial challenges it was facing.

To accomplish this transaction, on April 6, 2020, Wingsail and SEFED entered into an agreement entitled "Agreement To Accept Collateral In Full Satisfaction of Obligations" (the "Satisfaction Agreement"). The Satisfaction Agreement was signed by Mr. Chang in his capacity as Wingsail's manager, and Mr. Polsky as SEFED's CEO. (Ex. 015.) It was also backdated to December 31, 2019 for tax purposes. Thereafter, Mr. Polsky guaranteed other loans made directly to Alter to keep it afloat and further, made equity investments into subsidiaries owned completely or in part by Alter. In short, while Wingsail understandably chose to walk away from Alter, Mr. Polsky took on a risk that Wingsail was unwilling to take and bet on himself by guaranteeing loans to Alter and making further investments related to Alter.

In March 2020, Ms. Bai introduced Adam Minow, a local accountant, to her accountant in Canada by email to finalize Ms. Bai and Wingsail's 2019 taxes. In that email string, on which Mr. Bai was copied, Mr. Mr. Minow confirmed that Wingsail had transferred its Alter membership interest in 2019. (Ex. 060.) Mr. Minow also discussed this fact with Ms. Bai. And relatedly, Mr. Chang had updated Wingsail's

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-4-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

balance sheet – which, like all of Wingsail's financials, he had shared with Ms. Bai – to show a zero balance as to Wingsail's Alter investment. (Ex. 053.)

## B.    Plaintiffs' Evolving Factual Narrative

On December 18, 2023, Wingsail – not Ms. Bai – filed its complaint thereby commencing this matter. Dkt. 1. Wingsail's initial theory was that Mr. Polsky had used an *unsigned* Alter operating agreement that he never intended on signing to induce Wingsail's investments into Alter. Dkt. 1 (Complaint, ¶¶ 56-61). Wingsail at that time was represented by Mr. Almadani, who ended up withdrawing from this matter.[4]

After retaining new counsel, Wingsail filed a first amended complaint (the "FAC") and ultimately, a second amended complaint (the "SAC"), which is the operative complaint.[5] In the FAC, Plaintiffs abandoned completely the theory that they were defrauded by Mr. Polsky through the use of an unsigned operating agreement. *See generally*, Dkt. 46. Plaintiffs' new theory is that Mr. Polsky and SEFED never informed Wingsail and Ms. Bai that Alter's interest would be transferred to SEFED, never gave Wingsail and Ms. Bai the opportunity to cure the default on SEFED's loan, and that Mr. Polsky continued to assure Wingsail and Ms. Bai that Wingsail's investment in Alter was safe. Dkt. 46 (FAC, ¶ 20). Wingsail and Ms. Bai also allege that Mr. Chang signed the Satisfaction Agreement, but that he did not understand its effect.[6] *Id*. (FAC, ¶ 23).

The SAC alleges these same facts. Dkt. 54 (SAC, ¶ 20 & 25). This time – and

---

[4]    Mr. Chang made these same allegations in a verified cross-complaint in another case that had been pending before this Court and that has since been remanded to state court. That case is entitled *Polsky v. Chang* Case No. 8:23-cv-00225-CJC-ADS (the "Chang Action"). *See*, Chang Action, Dkt 65 (VSACC, ¶¶ 119, 121 – 124). Mr. Chang was also represented by Mr. Almadani in that matter and like in this action, withdrew from representing Mr. Chang shortly after the filing of Mr. Chang's verified cross-complaint. Chang Action, Dkt. 68. Mr. Chang is on his third set of attorneys in the Chang Action as are Wingsail and Ms. Bai here.

[5]    Based on Plaintiffs' memorandum of contentions of fact and law, Plaintiffs have abandoned many of the claims alleged in the SAC. *See generally*, Dkt. 106.

[6]    Mr. Chang is a sophisticated businessman who went to graduate school and earned a Master of Business Administration degree.

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-5-

Case No. 8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

for the first time – Wingsail and Ms. Bai also allege that they discovered the scope of Mr. Polsky and SEFED's alleged misconduct *for the first time* in December 2022. Dkt. (SAC, ¶ 29).

## III.    DEFENDANTS' REQUEST FOR BIFURCATION

Defendants seek bifurcation of their Statute of Limitations Affirmative defense. Plaintiffs did not bring this lawsuit within the applicable three-year statute of limitations period. *See* California Code of Civil Procedure § 338(d); *Thomson v. Canyon*, 198 Cal. App. 4th 594, 606 (2011) ("To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e. the 'gravamen' of the cause of action."); *See also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 920 (N.D. Cal. 2018) ("State statutes of limitations and tolling rules are viewed as substantive, not procedural, law.").

Wingsail and Ms. Bai knew as of March 16, 2020 that Wingsail's interest in Alter had been transferred, or was in the process of being transferred, to SEFED in connection with Wingsail's proposal to transfer that interest in lieu of paying off SEFED's loan. Further, Wingsail and Ms. Bai knew as of April 6, 2020 that Wingsail's interest in Alter had been transferred to SEFED by way of the Satisfaction Agreement that Wingsail had signed. Thus, Wingsail and Ms. Bai were on notice of any alleged wrongdoing as of March 16, 2020 or April 6, 2020 at the latest. And thus, the three-year statute of limitations expired on March 16, 2023 or April 6, 2023 at the latest.

Here, Plaintiffs filed this lawsuit on December 18, 2023, which is *after* March 16 and April 6, 2023, the dates on which the statute of limitations expired. Plaintiffs' claims are thus subject to being dismissed in their entirety if the Court finds, based on the evidence, that this lawsuit was filed *after* the statute of limitations expired.

Bifurcation here makes sense for several reasons, including judicial economy

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-6-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

and preserving party resources. Plaintiffs' examination estimates – if they remain – amount to multiple days of testimony, much of which will be cumulative or irrelevant given the relevant issues. Thus, Defendants believe that the best court of action is to bifurcate the statute of limitations issues, determine that issue first, and proceed with trial in the unlikely event that the objective evidence shows that neither Wingsail nor Ms. Bai knew that Wingsail's interest in Alter had been transferred to SEFED in early 2020 (March or April) pursuant to Wingsail's proposal to transfer that interest in lieu of repaying SEFED's loan.

## IV. SUMMARY OF PLAINTIFFS' CLAIMS

Based on Defendants' review of Plaintiffs memorandum of fact and law, Plaintiffs assert nine claims they wish to pursue against Defendants at trial[7].

### A. Claim 1 – Breach of Fiduciary Duty

#### 1. Elements Required

To prove this claim, Plaintiffs must prove the following elements:

1. Mr. Polsky was Plaintiffs' manager;

2. Mr. Polsky acted on Plaintiffs' behalf for purposes of managing the business and financial affairs of Wingsail Holdings as described in the Management and Investments Agreement;

3. Mr. Polsky failed to act as a reasonably careful manager would have acted under the same or similar circumstances;

4. Plaintiffs were harmed; and

5. Mr. Polsky's conduct was a substantial factor in causing Plaintiffs' harm.

#### 2. Why Plaintiffs' Claim Fails

The operative contracts, additional documents, and witness testimony disprove each element of this claim. In short, Mr. Polsky was not Wingsail's manager, Mr. Chang was and remains Wingsail's manager. Mr. Polsky did not

---

[7] Based on Plaintiffs' memorandum of contentions of facts and law Plaintiff have chosen to abandon many of the claims alleged in their operative pleading.

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-7-

Case No. 8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

undertake to represent Ms. Bai in any capacity. If anyone did, it was Mr. Chang, the person who solicitated an investment from Ms. Bai, the person who Ms. Bai appointed as Wingsail's manager, the person who Ms. Bai paid to be Wingsail's manager, and the person with whom Ms. Bai consulted as to Wingsail matters, including Wingsail's investment in Alter.

### B.   Claim 2 – Breach of Fiduciary Duty (Breach of Duty of Undivided Loyalty)

#### 1.   Elements Required

Plaintiffs must prove:

1. Mr. Polsky was Plaintiffs' manager;

2. Mr. Polsky knowingly acted against Plaintiffs' interests and/or acted on behalf of a party whose interests were adverse to Plaintiff in connection with his management of the business and financial affairs of Plaintiff Wingsail Holdings, LLC as described in the Management and Investments Agreement;

3. Plaintiffs did not give informed consent to Mr. Polsky's conduct;

4. Plaintiffs were harmed; and

5. Defendant Mr. Polsky's conduct was a substantial factor in causing Plaintiffs' harm.

#### 2.   Why Plaintiffs' Claim Fails

The operative contracts, additional documents, and witness testimony disprove each element of this claim. In short, Mr. Polsky was not Wingsail's manager, Mr. Chang was and remains Wingsail's manager. Mr. Polsky did not undertake to represent Ms. Bai in any capacity. If anyone did, it was Mr. Chang, the person who solicitated an investment from Ms. Bai, the person who Ms. Bai appointed as Wingsail's manager, the person who Ms. Bai paid to be Wingsail's manager, and the person with whom Ms. Bai consulted as to Wingsail matters, including Wingsail's investment in Alter.

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-8-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

## C.    Claim 3 – Constructive Fraud

### 1.    Elements Required

1. Mr. Polsky was Plaintiffs' manager;

2. Mr. Polsky acted on Plaintiffs' behalf for purposes of managing the business and financial affairs of Plaintiff Wingsail Holdings as described in the Management and Investments Agreement;

3. Mr. Polsky knew, or should have known, certain information relating to those business and financial affairs;

4. Mr. Polsky misled Plaintiffs by failing to disclose this information and/or by providing Plaintiffs with information that was inaccurate or incomplete;

5. Plaintiffs were harmed; and

6. Mr. Polsky's conduct was a substantial factor in causing Plaintiffs' harm.

### 2.    Why Plaintiffs' Claim Fails

The operative contracts, additional documents, and witness testimony disprove each element of this claim. In short, Mr. Polsky was not Wingsail's manager, Mr. Chang was and remains Wingsail's manager. Mr. Polsky did not undertake to represent Ms. Bai in any capacity. If anyone did, it was Mr. Chang, the person who solicited an investment from Ms. Bai, the person who Ms. Bai appointed as Wingsail's manager, the person who Ms. Bai paid to be Wingsail's manager, and the person with whom Ms. Bai consulted as to Wingsail matters, including Wingsail's investment in Alter.

## D.    Claim 4 – Fraud by Concealment

### 1.    Elements Required

1. Mr. Polsky was Plaintiffs' manager and he intentionally failed to disclose certain facts to Plaintiffs;

2. Plaintiffs did not know of the concealed facts;

3. Mr. Polsky intended to deceive Plaintiffs by concealing facts;

4. Had the omitted information been disclosed, Plaintiffs reasonably would

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-9-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

have behaved differently;

5. Plaintiffs were harmed; and

6. Mr. Polsky's concealment was a substantial factor in causing Plaintiffs' harm.

### 2.    Why Plaintiffs' Claim Fails

The operative contracts, additional documents, and witness testimony disprove each element of this claim. In short, Mr. Polsky was not Wingsail's manager, Mr. Chang was and remains Wingsail's manager. Mr. Polsky did not undertake to represent Ms. Bai in any capacity. If anyone did, it was Mr. Chang, the person who solicitated an investment from Ms. Bai, the person who Ms. Bai appointed as Wingsail's manager, the person who Ms. Bai paid to be Wingsail's manager, and the person with whom Ms. Bai consulted as to Wingsail matters, including Wingsail's investment in Alter. Further, all relevant facts were disclosed to Wingsail and Ms. Bai as reflected in documents and witness testimony.

### E.    Claim 5 – Fraud by False Promise

#### 1.    Elements Required

1. Mr. Polsky and/or SEFED made a promise to Plaintiffs;

2. Defendants did not intend to perform this promise when they made it;

3. Mr. Polsky and/or SEFED intended that Plaintiffs rely on this promise;

4. Plaintiffs reasonably relied on Defendants' promise;

5. Defendants did not perform the promised act;

6. Plaintiffs were harmed; and

7. Plaintiffs' reliance on Defendants' promise was a substantial factor in causing their harm.

#### 2.    Why Plaintiffs' Claim Fails

The operative contracts, additional documents and witness testimony presented at trial will disprove each element of Plaintiffs' Claim. All relevant facts

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-10-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

were disclosed to Wingsail and Ms. Bai as reflected in documents and witness testimony. Indeed, there were no false representations – and Plaintiff have not identified any – made as to Wingsail's decision to transfer its interest in Alter to SEFED in lieu of paying off SEFED's loan.

### F.    Claim 6 – Conversion

#### 1.    Elements Required

1. Plaintiffs owned, possessed, and/or had a right to possess certain personal property;

2. Mr. Polsky and/or SEFED substantially interfered with Plaintiffs' property by knowingly or intentionally refusing to return the personal property after Plaintiffs demanded its return;

3. Plaintiffs did not consent;

4. Plaintiffs were harmed; and

5. Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

#### 2.    Why Plaintiffs' Claim Fails

The operative contracts, additional documents and witness testimony presented at trial will disprove each element of Plaintiffs' Claim. Here, Wingsail proposed transferring its interest in Alter to SEFED in lieu of paying off SEFED's loan.

### G.    Claim 7 – Money Had and Received

#### 1.    Elements Required

1. Mr. Polsky and/or SEFED received money that was intended to be used for the benefit of Plaintiffs;

2. The money was not used for the benefit of Plaintiffs; and

3. Defendants have not given the money to Plaintiffs.

#### 2.    Why Plaintiffs' Claim Fails

The operative contracts, additional documents and witness testimony presented at trial will disprove each element of Plaintiffs' Claim. Here, neither

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-11-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

Defendant received any money from either Plaintiff.

### H.   Claim 8 – Theft (Penal Code § 496)

#### 1.   Elements Required

1. Mr. Polsky and/or SEFED received money or property that was stolen or that was obtained by theft, or they withheld or aided in withholding the money or property from Plaintiffs; and

2. Defendants knew the money or property was stolen or obtained by theft.

#### 2.   Why Plaintiffs' Claim Fails

The operative contracts, additional documents and witness testimony presented at trial will disprove each element of Plaintiffs' Claim. In short, Mr. Polsky was not Wingsail's manager, Mr. Chang was and remains Wingsail's manager. Mr. Polsky did not undertake to represent Ms. Bai in any capacity. If anyone did, it was Mr. Chang, the person who solicitated an investment from Ms. Bai, the person who Ms. Bai appointed as Wingsail's manager, the person who Ms. Bai paid to be Wingsail's manager, and the person with whom Ms. Bai consulted as to Wingsail matters, including Wingsail's investment in Alter. Further, all relevant facts were disclosed to Wingsail and Ms. Bai as reflected in documents and witness testimony.

### I.   Claim 9 – Accounting

#### 1.   Elements Required

1. Mr. Polsky and/or SEFED were in a fiduciary relationship with Plaintiffs that requires an accounting; and

2. Some balance is due Plaintiffs that can only be ascertained by an accounting.

#### 2.   Why Plaintiffs' Claim Fails

The operative contracts, additional documents, and witness testimony disprove each element of this claim. In short, Mr. Polsky was not Wingsail's manager, Mr. Chang was and remains Wingsail's manager. Mr. Polsky did not

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-12-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

undertake to represent Ms. Bai in any capacity. If anyone did, it was Mr. Chang, the person who solicitated an investment from Ms. Bai, the person who Ms. Bai appointed as Wingsail's manager, the person who Ms. Bai paid to be Wingsail's manager, and the person with whom Ms. Bai consulted as to Wingsail matters, including Wingsail's investment in Alter.

## V.   SUMMARY OF DEFENDANTS' AFFIRMATIVE DEFENSES

### A.   Second Affirmative Defense: Statute of Limitations

#### 1.   Elements Required

Defendants must prove:

Plaintiff did not bring this lawsuit within the applicable three-year statute of limitations period. *See* California Code of Civil Procedure § 338(d); *Thomson v. Canyon*, 198 Cal. App. 4th 594, 606 (2011)("To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e. the 'gravamen' of the cause of action."); *See also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 920 (N.D. Cal. 2018) ("State statutes of limitations and tolling rules are viewed as substantive, not procedural, law.").

#### 2.   Brief Description of Key Evidence Supporting This Defense

The operative contracts, additional documents and witness testimony presented at trial will prove each element of Defendants' Affirmative Defense. In short, Plaintiffs became aware as of March and April 2020 that Wingsail voluntarily transferred its interest in Alter to SEFED in lieu of paying off the loan it obtained from SEFED. The status of limitations expired in April 2023 at the latest and this action was filed in December 2023, which is many months *after* the statute of limitations period expired.

### B.   Third Affirmative Defense: Laches

#### 1.   Elements Required

Defendants must prove:

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-13-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

1. Unreasonable or inexcusable delay by the Plaintiff in bringing suit; and

2. Prejudice to the defendant resulting from that delay.

*Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corporation* 782 F.Supp.3d 836, 866 (N.D. Cal. 2025).

**2.    Brief Description of Key Evidence Supporting This Defense**

The operative contracts, additional documents and witness testimony presented at trial will prove each element of Defendants' Affirmative Defense. In short, Plaintiffs became aware as of March and April 2020 that Wingsail voluntarily transferred its interest in Alter to SEFED in lieu of paying off the loan it obtained from SEFED. The status of limitations expired in April 2023 at the latest and this action was filed in December 2023, which is many months *after* the statute of limitations period expired.

**C.    Fourth Affirmative Defense: Good Faith**

**1.    Elements Required**

Defendants must prove:

1. Mr. Polsky took the property from Wingsail in good faith; and

2. That he took the property for a reasonably equivalent value.

CACI No. 4207

**2.    Brief Description of Key Evidence Supporting This Defense**

The operative contracts, additional documents and witness testimony presented at trial will prove each element of Defendants' Affirmative Defense. Here, no property was taken from Wingsail in bad faith. To the contrary, Mr. Polsky acted in good faith when SEFED accepted Wingsail's offer to transfer its interest in Alter to SEFED (at a time that Alter had no value) in lieu of paying off the loan from SEFED. Further all documents regarding this transfer were shared with Wingsail and Ms. Bai.

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-14-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

**D.      Seventh Affirmative Defense: Lack of Standing**

      **1.      Elements Required**

Defendants must prove that Ms. Bai lacks standing to bring these claims against Defendants.

      **2.      Brief Description of Key Evidence Supporting This Defense**

The operative contracts, additional documents and witness testimony presented at trial will prove each element of Defendants' Affirmative Defense. Here, Ms. Bai has no standing to seek alleged damages suffered by another party, Wingsail.

**E.      Eighth Affirmative Defense: Lack Of Privity**

      **1.      Elements Required**

Defendants must prove that no direct contractual relationship exists, or existed, between Plaintiffs and Defendants.

      **2.      Brief Description of Key Evidence Supporting This Defense**

The operative contracts, additional documents and witness testimony presented at trial will prove each element of Defendants' Affirmative Defense. Here, there are no contracts between Ms. Bai and Mr. Polsky and/or SEFED. Further, there are no contracts between Mr. Polsky and Wingsail and/or Ms. Bai.

**F.      Ninth Affirmative Defense: Estoppel and Waiver**

      **1.      Elements Required**

Defendants must prove:

1. That Plaintiffs knew Defendants were required to act; and

2. That Plaintiffs freely and knowingly gave up their rights to have Defendants perform these obligations.

CACI No. 336

      **2.      Brief Description of Key Evidence Supporting This Defense**

The operative contracts, additional documents and witness testimony presented at trial will prove each element of Defendants' Affirmative Defense. Here,

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-15-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

Wingsail proposed, and SEFED accepted, transferring its interest in Alter to SEFED in lieu of paying SEFED's loan off.

### G.    Nineteenth Affirmative Defense: Failure to Mitigate Damages

#### 1.    Elements Required

Defendants must prove that Plaintiffs failed to take reasonable steps to mitigate their damages.

*Agam v. Gavra*, 236 Cal. App. 4th 91, 111 (2015)

#### 2.    Brief Description of Key Evidence Supporting This Defense

The operative contracts, additional documents and witness testimony presented at trial will prove each element of Defendants' Affirmative Defense. Here, Plaintiffs should have sought remedies against Mr. Chang and having failed to timely do so, have failed to mitigate the damages claimed here.

### H.    Twentieth Affirmative Defense: Consent

#### 1.    Elements Required

Defendants must prove that Plaintiffs consent to the particular conduct, or to substantially the same conduct, that forms the basis of Plaintiffs' claims, and Defendants did not exceed the scope of that consent. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023)

#### 2.    Brief Description of Key Evidence Supporting This Defense

The operative contracts, additional documents and witness testimony presented at trial will prove each element of Defendants' Affirmative Defense. Here, Wingsail proposed, and SEFED accepted, transferring its interest in Alter to SEFED in lieu of paying SEFED's loan off.

### I.    Twenty-Fifth Affirmative Defense: No Duty

#### 1.    Elements Required

Defendants must prove that they owned no legally cognizable duty to Plaintiffs.

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-16-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

## 2.    Brief Description of Key Evidence Supporting This Defense

The operative contracts, additional documents, and witness testimony disprove each element of this claim. In short, Mr. Polsky was not Wingsail's manager, Mr. Chang was and remains Wingsail's manager. Mr. Polsky did not undertake to represent Ms. Bai in any capacity. If anyone did, it was Mr. Chang, the person who solicited an investment from Ms. Bai, the person who Ms. Bai appointed as Wingsail's manager, the person who Ms. Bai paid to be Wingsail's manager, and the person with whom Ms. Bai consulted as to Wingsail matters, including Wingsail's investment in Alter.

### J.    Twenty-Ninth Affirmative Defense: Novation

#### 1.    Elements Required

Defendants must prove that all parties agreed, by words or conduct, to cancel the original contract and to substitute a new contract in its place. CACI No. 337

#### 2.    Brief Description of Key Evidence Supporting This Defense

The operative contracts, additional documents and witness testimony presented at trial will prove each element of Defendants' Affirmative Defense. Here, Wingsail proposed, and SEFED accepted, transferring its interest in Alter to SEFED in lieu of paying SEFED's loan off.

## VI.    ABANDONMENT OF ISSUES

Defendants do not intend to attempt to prove the following affirmative defenses at trial: First Affirmative Defense of Failure to State a Claim for Relief; Fifth Affirmative Defense of No Causation; Sixth Affirmative Defense of Intervening Causes; Tenth Affirmative Defense of Indispensable Party; Eleventh Affirmative Defense of Indemnity; Twelfth Affirmative Defense of Unclean Hands; Thirteenth Affirmative Defense of Plaintiffs' Conduct; Fourteenth Affirmative Defense of Contributory Fault and/or Comparative Fault; Fifteenth Affirmative Defense of Conduct of Plaintiffs' Other Agents; Sixteenth Affirmative Defense of Fraud; Seventeenth Affirmative Defense of Business Judgment Rule; Eighteenth

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-17-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW

Affirmative Defense of Breach; Twenty-First Affirmative Defense of Active Tortious Conduct; Twenty-Second Affirmative Defense of Failure of Conditions Precedent; Twenty-Third Affirmative Defense of Setoff and Recoupment; Twenty-Fourth Affirmative Defense of Offset; Twenty-Sixth Affirmative Defense of Frustration of Purpose; Twenty-Seventh Affirmative Defense of Full Performance; and Twenty-Eighth Affirmative Defense of Novation.

Defendants reserve the right to argue that Plaintiff bears the burden to prove issues raised by or relevant to the above defenses.

## VII.   ATTORNEYS' FEES

There is no right to attorneys' fees in this action. Both parties are responsible for their own attorneys' fees.

Plaintiffs' argument that they are entitled to attorneys' fees is incorrect because (1) Neither Defendant was ever a party to the Management and Investments Agreement between Wingsail and MCAP; (2) Neither Defendant was ever a party to the Membership Interest Option Agreement between Wingsail and MCAP; and (3) Neither Defendant was ever a party to the Alter Operating Agreement.

Dated:  May 22, 2026                    RUTAN & TUCKER, LLP


By:   */s/ Alejandro S. Angulo*
        Alejandro S. Angulo
        Attorneys for Defendants
        ANDREW POLSKY, and SEFED

Rutan & Tucker, LLP
attorneys at law

3127/037539-0004
23285657.1 a05/22/26

-18-

Case No.  8:23-CV-02398-JWH-DFM
DEFENDANTS' MEMO OF CONTENTIONS
OF\FACT AND LAW